[No. A093277. First Dist., Div. One. Jan. 9, 2002.]

BODRELL JOER'DAN SMITH, Plaintiff and Appellant, v. HOPLAND BAND OF POMO INDIANS et al., Defendants and Respondents.

## COUNSEL

Law Offices of Eugene L. Bass and Eugene L. Bass for Plaintiff and Appellant.

Rapport & Marston and Lester J. Marston for Defendants and Respondents.

## OPINION

**STEIN, Acting P. J.**—Bodrell Joer'dan Smith (Smith) appeals an order sustaining, without leave to amend, the Hopland Band of Pomo Indians'

(Tribe's) demurrer, and granting the Tribe's motion to dismiss[1] Smith's second amended complaint. The court held that the Tribe had not waived its sovereign immunity, by entering into a contract containing an arbitration clause, and agreeing to the application of California law, because a tribal ordinance provided that its sovereign immunity could only be waived by an ordinance or resolution of the tribal council explicitly waiving immunity.

We shall reverse and remand to the trial court.

## FACTS

Smith is an architect. On July 30, 1999, and September 27, 1999, he entered into two contracts with the Tribe to provide planning and architectural services related to development of Indian land, including a new casino and hotel. After a dispute arose over performance and payment, Smith filed a complaint in Mendocino County Superior Court seeking to recover unpaid fees of over $800,000. A copy of each of the contracts was attached to the complaint. The contracts included the American Institute of Architects Standard Form of Agreement Between Owner and Architect, AIA Document A141. Article 7 provides, in relevant part:

"7.1 Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise."

"7.3 . . . The foregoing agreement to arbitrate . . . shall be specifically enforceable in any court having jurisdiction thereof.

"7.4 The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

Article 9 further provides: "9.1 Unless otherwise provided, this Agreement shall be governed by the law of the principal place of business of the Architect." Smith's address was listed as Palo Alto, California.

---

[1]Smith filed this appeal prematurely from the order sustaining the demurrer and granting the motion to dismiss, instead of waiting for the court to enter a judgment in accordance with its order. Although we fail to understand why the clearly established law on this point continues to be disregarded, in the interest of judicial economy, we shall deem the order to incorporate a judgment of dismissal. (See, e.g., *Cohen v. Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669 [242 Cal.Rptr. 84]; *Modica v. Merin* (1991) 234 Cal.App.3d 1072, 1074-1075 [285 Cal.Rptr. 673]; *Francis v. Dun & Bradstreet, Inc.* (1992) 3 Cal.App.4th 535, 538 [4 Cal.Rptr.2d 361].)

After Smith voluntarily dismissed his causes of action against individual Tribe members, the Tribe filed a motion to quash service of summons, demurrer, and motion to dismiss, on several grounds, including the assertion of sovereign immunity. In support of the motion, it submitted, among other things, a certified copy of a tribal ordinance, passed on February 23, 1999, which provided, in pertinent part:

"2.070 Sovereign Immunity of the Tribe. Except as otherwise provided by a duly enacted Ordinance of the Hopland Tribal Council or a Resolution of the Hopland Tribal Council adopted pursuant to such authorizing Ordinance, explicitly waiving the Tribe's sovereign immunity from unconsented suit, the Hopland Band of Pomo Indians:

"A. Does not consent to be sued and is not subject to suit in any administrative or court proceeding; and

"B. Is not liable for any act or omission of any Tribal officer, elected official, Tribal employee, or any other person, organization, or entity owned or operated by the Tribe."

The court denied the motion to quash and motion to dismiss, and sustained the demurrer with leave to amend as to some causes of action and without leave to amend as to others. On the issue of sovereign immunity, it followed a line of authority represented by *Sokaogon Gaming Enterp. v. Tushie-Montgomery Assoc.* (7th Cir. 1996) 86 F.3d 656, which held that similar contract language agreeing to arbitration, and enforcement in any court of competent jurisdiction, is an explicit waiver of sovereign immunity. The trial court further noted that the Tribe had not disputed the authority of the tribal chairperson to sign the contract, and it therefore did not consider what effect the sovereign immunity ordinance might have had.

Smith filed a second amended complaint alleging three causes of action for breach of contract. The Tribe filed another demurrer, or motion to dismiss. This time, the Tribe did argue, among other things,[2] that in accordance with the tribal sovereign immunity ordinance, Sandra Sigala, the tribal chairperson who signed the contracts, did not have the authority to waive the Tribe's sovereign immunity in the absence of an ordinance, or resolution pursuant to such ordinance, explicitly waiving sovereign immunity. The Tribe submitted the declaration of Sandra Sigala, authenticating the sovereign immunity ordinance. Brian Yepez, the Tribe's treasurer, declared that,

---

[2]The Tribe also contended that the complaint should be dismissed because Smith failed to exhaust the administrative claims procedure established by the tribal claims ordinance. The court never reached this argument, and it is not advanced in the Tribe's briefs on appeal as an alternative ground for affirmance.

although the tribal council passed a resolution approving the contract, it did not understand the arbitration clause to constitute a waiver of the Tribe's sovereign immunity, and that the resolution approving the contract, "did not contain authorization . . . to waive the Tribe's sovereign immunity or approve a contract waiving the Tribe's sovereign immunity."

In opposition, Smith filed his own declaration, stating that on September 14, 1999, he was present at a meeting of the tribal council, during which it authorized, by unanimous vote, Sandra Sigala to negotiate and execute contracts with Smith. At that same meeting, Smith gave each tribal council member a copy of each of the contracts that he had presented, and left three signed originals, all of which contained the same AIA B141 standard form 1 arbitration clauses that were included in the final contacts. He was also present at a tribal council meeting on September 27, 1999, during which all members present participated in negotiating and modifying the wording of the two agreements.

On October 10, 2000, the court filed its order on the demurrer and motion to dismiss. It, preliminarily, observed that the assertion of sovereign immunity, and the claim of waiver, presented a question affecting its subject matter jurisdiction, and that it therefore was appropriate to consider the declarations submitted, to the extent that they related to the issue of sovereign immunity, and resolve any conflicts necessary to determine whether it had jurisdiction.[3] The court ruled that the sovereign immunity ordinance requires that the tribal council pass an ordinance, or resolution, explicitly waiving its sovereign immunity. It further held that the fact that the tribal council members were aware of the contract, and its terms, when it authorized Sigala to sign it, did not constitute a waiver of sovereign immunity because the council did not pass an ordinance or resolution explicitly waiving its sovereign immunity. It therefore sustained the demurrer without leave to amend, and granted the motion to dismiss, with directions for the Tribe's counsel to prepare, and submit an appropriate order.[4] Smith filed a notice of appeal on November 27, 2000.

ANALYSIS

While this appeal was pending, the United States Supreme Court, in *C & L Enterprises v. Potawatomi Indian Tribe* (2001) 532 U.S. 411 [121

---

[3]All of the declarations submitted also contained assertions of facts relevant to the underlying substantive breach of contract claim, and to the applicability of the tribal claims ordinance and to Smith's assertion that the Tribe was either estopped to assert that he failed to exhaust that remedy, or that exhaustion would be futile. The court expressly declined to consider the declarations for any purpose other than as relevant to the issue of waiver of sovereign immunity.

[4]The court inadvertently referred to a motion to strike, but previously, in the same order, it stated it was ruling on a demurrer and motion to dismiss.

S.Ct. 1589, 149 L.Ed.2d 623] (hereafter *C & L Enterprises*), resolved the split of authority that had emerged in the state and federal courts[5] on the question whether, by agreeing to an arbitration clause, and to enforcement of an arbitral award, " 'in any court having jurisdiction thereof,' " a tribe has waived its sovereign immunity from suit. The court concluded that agreement to such contract language constitutes an *explicit* waiver, of tribal sovereign immunity. (*C & L Enterprises*, at p. 421 [121 S.Ct. at pp. 1595-1596].) As we shall explain, the contract in this case is indistinguishable from the contract in *C & L Enterprises*, and the only reasonable interpretation of its terms is that it clearly, and *explicitly* waives tribal sovereign immunity.

The court, in *C & L Enterprises, supra,* 532 U.S. 411 focused on two key contractual provisions which, in all material respects, are identical to the arbitration clause, and choice of law provision included in the contract between appellant and respondent. The arbitration clause in *C & L Enterprises*, provided: " 'All claims or disputes . . . shall be decided by arbitration in accordance with the Construction [I]ndustry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise . . . . The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.' " (*C & L Enterprises, supra,* 532 U.S. at p. 411 [121 S.Ct. at pp. 1592-1593].) The court noted that, "[t]he American Arbitration Association Rules to which the clause refers provide: 'Parties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.' " (*Ibid.*)

The choice of law provision selected Oklahoma law. Oklahoma, like California,[6] has adopted a provision of the Uniform Arbitration Act which provides that " '[t]he making of an agreement . . . providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this act and to enter judgment on an award hereunder,' " and which further defines, " 'court' as 'any court of competent jurisdiction of this state.' " (*C & L Enterprises, supra,* 532 U.S. at p. 411 [121 S.Ct. at p. 1593]; see also Code Civ. Proc. §§ 1293, 1287.4).)

The court rejected the conclusion of the Oklahoma Court of Appeals, that the contract language constituted only a waiver by implication, because the

---

[5]See *Sokaogon Gaming Enterp. v. Tushie-Montgomery Assoc., supra,* 86 F.3d 656 (arbitration clause, and provision authorizing entry of judgment based upon award in any court having jurisdiction constitutes an explicit waiver of tribal sovereign immunity); *Native Village of Eyak v. GC Contractors* (Alaska 1983) 658 P.2d 756 (same); *Val/Del, Inc. v. Superior Court* (1985) 145 Ariz. 558 [703 P.2d 502] (same); but cf. *Pan American Co. v. Sycuan Band of Mission Indians* (9th Cir. 1989) 884 F.2d 416 (arbitration clause did not waive immunity).

[6]The contract between appellant and respondent selects California law.

contract did not use the words "sovereign immunity," or expressly state that the defense of sovereign immunity is waived. An implied waiver would be ineffective in the face of an established standard of federal law that requires a waiver of tribal immunity must be "clear." (*C & L Enterprises, supra,* 532 U.S. at p. 412 [121 S.Ct. at p. 1594], citing *Oklahoma Tax Comm'n v. Potawatomi Tribe* (1991) 498 U.S. 505-509 [111 S.Ct. 905, 909, 112 L.Ed.2d 1112].) The court, instead, held the contract language was unambiguous, and by agreeing to submit all disputes to arbitration, to enforcement in any court of competent jurisdiction, and accepting Oklahoma law as the law governing the contract, the tribe had clearly and explicitly waived its sovereign immunity. (*C & L Enterprises, supra,* 532 U.S. at pp. 412-413 [121 S.Ct. at pp. 1594-1596].)

Respondent's demurrer and motion to dismiss, however, raise an additional issue that the Supreme Court in *C & L Enterprises* expressly declined to reach: Respondent contends that, even if the contract does explicitly waive sovereign immunity, in accordance with the Tribe's sovereign immunity ordinance, in the absence of an ordinance or resolution of the tribal council explicitly waiving sovereign immunity, Sandra Sigala did not have actual authority to waive it.[7]

Respondent, however, does not dispute that Sigala had the authority to negotiate the contracts with Smith, and to execute the final versions which included the arbitration clause and choice of law provisions, and that the tribal council, by resolution, approved the contracts. ▇ ▇ The declaration of Brian Yepez admits that the tribal council authorized Sandra Sigala to negotiate and execute the contracts.[8] Brian Yepez's declaration also admits that the tribal council, by resolution, approved the contracts as

---

[7] *C & L Enterprises, supra,* 532 U.S. at page 423, footnote 6 [121 S.Ct. at page 1597] (court declined to reach the issue of authority to waive sovereign immunity because it was not litgated in the state court).

[8] The tribal sovereign immunity ordinance is judicially noticeable. (Evid. Code, §§ 451, 452.) The declarations submitted to the court are not normally considered in the context of a demurrer. The Tribe, however, characterized its request for relief, in the alternative, as a motion to dismiss. In *Great Western Casinos, Inc. v. Morongo Band of Mission Indians* (1999) 74 Cal.App.4th 1407 [88 Cal.Rptr.2d 828], the court adopted the reasoning of the federal courts, that when faced with a conflict on the question whether the defendants have waived their sovereign immunity, it is necessary and appropriate "to go beyond the pleadings and contract language to consider the testimonial and documentary evidence." (*Id.* at p. 1418, citing *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan* (D.C. Cir. 1997) 115 F.3d 1020, 1027-1028 [where the motion to dismiss is based upon a claim of sovereign immunity, which provides protection from suit, and not merely a defense to liability, the court may depart from the general rule that on a motion to dismiss the court accepts the pleadings as true, and draws all inferences in the plaintiff's favor, and instead must engage in sufficient pretrial factual and legal inquiry to determine whether it has the authority to hear the case]; *E.F.W. v. St. Stephen's Indian High School* (10th Cir. 2001) 264 F.3d 1297, 1302-1305.)

finally negotiated. Nor did respondent submit any declarations that contradict appellant's declaration that, at the meeting in which the tribal council authorized Sigala to negotiate and execute contracts with him, he gave all members of the tribal council copies of the contract including the arbitration, and choice of law clause, and that at the September 27, 1999 meeting the tribal council met with him and all members present participated in negotiating and modifying the terms of what became the final contracts. Instead, respondent's declarations acknowledge that, although the tribal council subjectively believed that agreeing to the arbitration clause did not waive sovereign immunity, when the tribal council authorized Sigala to sign the contracts, and passed its resolution approving them, it was fully aware of their terms, including the arbitration and choice of law clauses.

Therefore, we are not presented with a circumstance in which a tribal agent has signed a contract without authority to act on the Tribe's behalf. For that reason, the first decision upon which respondent relies, *Hydrothermal Energy Corp. v. Fort Bidwell Indian Community Council* (1985) 170 Cal.App.3d 489 [216 Cal.Rptr. 59], is inapposite. In that case, Lucinda Lame Bull, the chairman of the council, had signed two contracts with an educational agency organization that contained an arbitration clause. The tribe terminated the contracts when it discovered the agency proselytized for the Church of Scientology. The agency compelled arbitration, and the arbitrator concluded the tribe had waived its immunity by signing the contract with the arbitration clause. The trial court confirmed the arbitration award, but the Court of Appeal reversed, on the ground that Lucinda Lame Bull did not have actual authority to sign the contract on behalf of the tribe. The court based this conclusion upon a declaration filed by Ms. Lame Bull explaining that all contracts had to be approved by a quorum of the tribal council, that she informed the agency of this procedure, and she agreed to sign the contracts, without such approval, at the agency's request, only for limited bookkeeping purposes. (*Id.* at pp. 492-493.) Therefore, without approval of a quorum of the tribal council, she did not have actual authority to sign the contract on behalf of the tribe.

By contrast, here, the tribal council authorized Sigala to negotiate and execute the contracts with appellant, was aware of the terms, including the arbitration clause, and, by resolution, approved the contract. Thus, not only did Sigala clearly have authority to agree to all the contract terms, but also the tribal council ratified her action when it approved the contract. Despite respondent's declaration that the tribal council did not subjectively understand that by agreeing to its terms it had explicitly waived its sovereign immunity, the court's decision in *C & L Enterprises, supra,* 532 U.S. 411 [121 S.Ct. 1589] has definitively resolved that issue in appellant's favor.

Consequently, in the absence of the Tribe's sovereign immunity ordinance, respondent clearly and explicitly waived its sovereign immunity.

According to respondent, the effect of the sovereign immunity ordinance is to require the enactment of an ordinance or resolution explicitly waiving tribal sovereign immunity, even if the Tribe has, in accordance with other applicable laws, authorized one of its officials to execute a contract containing provisions explicitly waiving the Tribe's sovereign immunity, and the Tribe's governing body has, by resolution, approved the contract. Thus, the ordinance does not, in substance, define or limit authority to negotiate, execute, and approve a contract. Instead, it establishes a general principle of tribal law defining what acts may be deemed to constitute a waiver of its immunity. Therefore, respondents' argument stands or falls with the proposition that we must apply its tribal sovereign immunity ordinance to find the otherwise binding contract with Smith ineffective to waive sovereign immunity, because the explicit waiver was made by contract, instead of pursuant to a tribal ordinance or resolution. We decline to do so for several reasons:

First, the terms of the sovereign immunity ordinance may have been satisfied because, according to the declaration of Brian Yepez, the tribal council did pass a resolution approving the contract. Yepez also declares that the resolution "did not contain authorization from the Tribal Council to waive the Tribe's sovereign immunity *or approve a contract waiving the Tribe's sovereign immunity*." (Italics added.) The later assertion must be based only upon the fact that the resolution did not use the specific words "sovereign immunity" or "waiver," because the contract itself, approved by resolution of the tribal council, did contain language that constitutes an explicit waiver of sovereign immunity. (*C & L Enterprises, supra,* 532 U.S. 411 [121 S.Ct. 1589].) For the same reasons that the court in *C & L Enterprises* rejected the argument that to be deemed "explicit" the waiver must use the words "sovereign immunity," we do not interpret the reference in the tribal ordinance to an "explicit" waiver to mean that a resolution must use the magic words "waiver" or "sovereign immunity." It is unclear, however, whether the phrase "adopted pursuant to such authorizing Ordinance" means that such a resolution must also be preceded by a *separate* ordinance authorizing the tribal council, by resolution, to waive sovereign immunity, or whether "such authorizing Ordinance" refers to the tribal sovereign immunity ordinance itself. At a minimum, however, it is clear that the purpose of the tribal sovereign immunity ordinance is to ensure that no waiver of sovereign immunity is made by a single tribal officer, and that instead such waivers be made only by formal action of its governing body, the tribal council. That purpose is served here because, the tribal council, with full knowledge of its terms, approved the contract by resolution.

Second, we question the premise that the issue whether the Tribe has waived its sovereign immunity by entering into this contract should be determined by reference to a tribal law. Although there are, no doubt, some substantive differences between tribal sovereign immunity and the law applicable to waiver of immunity by foreign sovereigns, the court in *C & L Enterprises, supra,* 532 U.S. at page 421, footnote 3 [121 S.Ct. at page 1595] observed that reference to uniform federal law governing the waiver of immunities by foreign sovereigns is appropriate in deciding whether a particular act constitutes a waiver of tribal immunity. Therefore, in reaching its conclusion that the Potawatomi Tribe had waived its sovereign immunity by entering into a contract with the arbitration and choice of law clause, the court observed that, " '[u]nder the law of the United States . . . an agreement to arbitrate is a waiver of immunity . . . .' Restatement (Third) of the Foreign Relations Law of the United States § 456(2)(b)(ii) (1987)." (*Ibid.*) We conclude that, where, as here, the person negotiating and signing the contract is authorized to do so, and the tribal council approves the contract, the question whether that act constitutes a waiver is one of federal law.[9] Under federal law, "[w]hen a person has authority to sign an agreement on behalf of a state, it is assumed that the authority extends to a waiver of immunity contained in the agreement." (Rest.3d Foreign Relations Law of the United States, § 456, com. b, p. 417.) As we have explained, although the Tribe couches its argument in terms of whether Sigala had actual authority to agree to the contract terms, the declarations establish that she *did* have this authority, and moreover, that the tribal council, fully aware of its terms, approved of the contract by resolution.

Third, even if we were not to refer to federal law, in deciding whether the contractual waiver of tribal sovereign immunity is effective, we would not apply the sovereign immunity ordinance, because the contract itself specifies that it is to be governed by *California law.* Nothing in the tribal sovereign immunity ordinance purports to limit the manner in which the Tribe may consent to a *choice of law* provision, and respondent does not contend Sigala did not have authority to agree to it, or that the tribal council did not have the power to approve a contract containing such a provision. Therefore, at least

---

[9]Even if we were to accept the Tribe's characterization of the issue, as whether, in light of the tribal sovereign immunity ordinance, Sigala or the tribal council had the *authority* to execute or approve a contract, in *Aquamar v. Del Monte Fresh Produce* (11th Cir. 1999) 179 F.3d 1279, the court held that in deciding the issue of authority to waive sovereign immunity under the Foreign Sovereign Immunities Act, 28 United States Code section 1605, the court should *not* look to law of one foreign sovereign, but instead apply uniform principles of federal law: "Just as federal courts apply a federal standard to determinations of the scope of an express waiver, . . . and of the existence of an implied waiver, . . . we apply federal law to the question of whether a waiver has been effected by one with the authority to do so." (*Aquamar,* at p. 1294 & fn. 36.)

for purposes of interpreting and enforcing this contract, respondent agreed to be governed by California law, not tribal law. Under California law "[t]he making of an agreement . . . providing for arbitration to be had within this State shall be deemed a consent of the parties thereto to the jurisdiction of the courts of this State to enforce such agreement . . . and by entering judgment on an award [hereunder]." (Code Civ. Proc., §§ 1293, 1287.4.)[10]

The only decision we have found that addresses the effect of a similar tribal ordinance specifying the method by which tribal sovereign immunity may be waived is *Sanderlin v. Seminole Tribe of Florida* (11th Cir. 2001) 243 F.3d 1282. The tribal ordinance in *Sanderlin*, provided that consent of the Seminole Tribe to a waiver of its immunity may be made only by a resolution of the tribal council specifically acknowledging that the tribe is waiving its immunity, and specifying the limited purpose for which immunity is waived. The court stated that, in accordance with this ordinance, the chief did not have actual or apparent authority to waive tribal immunity, in the absence of a resolution of the tribal council. (*Id.* at p. 1288.)

The court's analysis of the tribal ordinance is dicta, and the facts are distinguishable in several important respects:

First, *Sanderlin* did not involve a contract containing an explicit waiver of sovereign immunity. It therefore was unnecessary for the court in *Sanderlin* even to reach the question of the effect of the tribal ordinance. Instead, in *Sanderlin*, the tribal chief, had, on behalf of the tribe, signed four applications for federal funds and agreed to the condition that the tribe comply with section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794). The court concluded that this condition conveyed nothing more than a promise not to discriminate, but could not be construed as explicit consent to be sued in federal or state court. (*Sanderlin v. Seminole Tribe of Florida, supra*, 243 F.3d at pp. 1288-1289.) Therefore, its discussion of the effect of the tribal ordinance is dicta.

Second, because the agreements did not involve an explicit waiver of tribal immunity under federal law, the court in *Sanderlin* never considered the question whether the tribal law, or federal law should apply in determining what acts constitute a waiver of tribal sovereign immunity.

Third, in *Sanderlin*, the tribal ordinance provided that a waiver of tribal immunity could be made only by resolution of the tribal council, yet the

---

[10]In light of this choice of law provision, we also fail to see how 28 United States Code section 1360(c), which generally provides that in a civil action (pursuant to that section) a tribal ordinance shall be given effect if not inconsistent with the law of the state, has any application.

chief alone signed the applications for federal funding, and there was no evidence that the tribal council had ever passed a resolution. By contrast, here, a person with actual authority to execute a contract on behalf of the Tribe did so, and then the contract, which included terms which explicitly waived the Tribe's sovereign immunity, was approved by resolution of the tribal council.

We conclude that the Tribe, through Sandra Sigala, and by resolution of the tribal council, entered into a contract with Smith that clearly and explicitly waived the Tribe's sovereign immunity. (*C & L Enterprises, supra,* 532 U.S. 411 [121 S.Ct. 1589].) The court therefore erred in sustaining the demurrer to the second amended complaint without leave to amend, and granting the motion to dismiss.[11]

CONCLUSION

The judgment is reversed, and the matter is remanded to the trial court. Costs to appellant.

Swager, J., and Marchiano, J., concurred.

A petition for a rehearing was denied February 6, 2002, and the opinion was modified to read as printed above.

---

[11]We hold only that the Tribe waived its sovereign immunity by entering into a contract containing the arbitration clause. The Tribe did not file a motion to compel arbitration in the proceedings below, and nothing in this opinion should be construed, on remand, to waive that defense, or any other defense the Tribe may have, including failure to exhaust the administrative claims procedure established by the tribal ordinance. We also express no opinion on the question whether the scope of the contractual waiver of immunity is limited to a suit to enforce an arbitration award, or a motion to compel arbitration, because the issue was not raised until respondents' petition for rehearing. (See, e.g., *Epperson v. Rosemond* (1950) 100 Cal.App.2d 344, 347 [223 P.2d 655]; *Sanders v. Howard Park Co.* (1948) 86 Cal.App.2d 721, 723 [195 P.2d 898].)