**Joseph COSTELLO, Plaintiff,**

v.

**SEMINOLE TRIBE OF FLORIDA, Defendants.**

**Case No. 8:10–cv–778–T–23AEP.**

United States District Court, M.D. Florida, Tampa Division.

July 12, 2010.

C. Ryan Morgan, Morgan & Morgan, PA, Orlando, FL, Richard Bernard Celler, Morgan & Morgan, PA, Davie, FL, for Plaintiff.

Donald A. Orlovsky, Kamen & Orlovsky, PA, West Palm Beach, FL, for Defendants.

## *ORDER*

STEVEN D. MERRYDAY, District Judge.

"[O]n behalf of all 'hourly-paid dealers' employed by the defendant in Florida and who worked for the defendant within the applicable statute of limitations," the plaintiff sues (Doc. 1) the Seminole Tribe of Florida (the "Tribe") to recover minimum wages due under the Fair Labor Standards Act ("FLSA")[1] and Article X, Section 24 of the Florida Constitution. The plaintiff alleges that the proposed class—comprised of "mostly non-tribal member employees"—received a direct wage less than the minimum wage required by federal and state law. Asserting sovereign immunity, the Tribe moves (Doc. 9) to dismiss for lack of subject matter jurisdiction and for failure to state a claim. In opposition (Doc. 12), the plaintiff argues (1) that the judiciary should abandon the "antiqu-

---

1. 29 U.S.C. § 206.

ated doctrine" of tribal sovereign immunity and (2) that, even if the Tribe enjoys sovereign immunity from an FLSA claim, the Tribe waived immunity by executing a gaming compact with Florida.[2]

### I.  Tribal Sovereign Immunity Persists

The plaintiff argues for abandonment of the "antiquated doctrine" of tribal sovereign immunity. Ironically, the plaintiff's response to the motion to dismiss highlights the futility of this argument. To support the "antiquity" argument, the plaintiff cites *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), which upholds tribal sovereign immunity. In *Kiowa*, the chairman of a tribe signed a promissory note in the name of the tribe to guarantee payment for shares of a technology company. The note specified no governing law but stated that "Nothing in this Note ... limits the sovereign rights of the Kiowa Tribe of Oklahoma." Following the tribe's defaulting on the note, the technology company sued the tribe for breach of contract. *Kiowa* reverses the lower court's denial of sovereign immunity and holds that "[t]ribes enjoy

immunity from suits on contracts...." 523 U.S. at 760, 118 S.Ct. 1700. Although acknowledging criticism of tribal immunity, *Kiowa* opts to "defer to the role Congress may wish to exercise in this important judgment." 523 U.S. at 758, 118 S.Ct. 1700.

In *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), the petitioner "asked [the Court] to abandon or at least narrow the doctrine [of tribal sovereign immunity] because tribal businesses had become far removed from tribal self-governance and internal affairs." 523 U.S. at 759, 118 S.Ct. 1700. *Potawatomi* upholds tribal immunity because Congress purposefully declined to abrogate the immunity, which promotes "tribal self-sufficiency and economic development." 498 U.S. at 510, 111 S.Ct. 905. Because "Congress has consistently reiterated its approval of the immunity doctrine," *Potawatomi* refuses to "modify the long-established principle of tribal immunity." 498 U.S. at 510, 111 S.Ct. 905. In sum, tribal sovereign immunity persists despite the criticism cited by the plaintiff.[3]

---

2. To establish "clear standards [and] regulations for the conduct of gaming on Indian lands," Congress enacted the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701. The Act "provides for tribes to negotiate compacts with their host states." *Florida House of Representatives v. Crist*, 999 So.2d 601, 604 (Fla.2008). In accord with the IGRA, the Tribe executed a gaming compact with the state of Florida to allow the Tribe to operate the Seminole Hard Rock Hotels & Casinos in Tampa and Hollywood, Florida. Section 285.711, Florida Statutes, codifies the compact.

3. The plaintiff relies exclusively on Justice Kennedy's majority opinion in *Kiowa*, 523 U.S. 751, 757–58, 118 S.Ct. 1700 (1998), which states:

> There are reasons to doubt the wisdom of perpetuating [tribal immunity]. At one time, the doctrine of tribal immunity from

suit might have been thought necessary to protect nascent tribal governments from encroachments by States. In our interdependent and mobile society, however, tribal immunity extends beyond what is needed to safeguard tribal self-governance. This is evident when tribes take part in the Nation's commerce. Tribal enterprises now include ski resorts, gambling, and sales of cigarettes to non-Indians. In this economic context, immunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victims.

Although acknowledging that "[t]hese considerations might suggest a need to abrogate tribal immunity," *Kiowa* concludes that tribal immunity is "settled law" and "defer[s] to the role Congress may wish to exercise in this important judgment." 523 U.S. at 756, 118 S.Ct. 1700. The plaintiff offers no reason to

## II. The FLSA Applies to the Tribe but Contains No Express Abrogation of Immunity

■■■■ "A general statute presumptively governs Indian tribes and will apply to them absent some superseding indication that Congress did not intend tribes to be subject to that legislation." *Florida Paraplegic Association, Inc. v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1129 (11th Cir.1999). However, "whether or not a tribe may be subject to a statute and whether or not a tribe may be sued for violating a statute are 'two entirely different questions.'" *Lobo v. Miccosukee Tribe of Indians of Florida*, 279 Fed.Appx. 926, 927 (11th Cir.2008) (quoting *Florida Paraplegic*, 166 F.3d at 1130). *Lobo* holds that the FLSA constitutes a "general statute" applicable to a tribe but that a tribe remains immune to an FLSA action unless the tribe "waives its immunity or Congress expressly abrogates it." *Lobo* finds that the text of the FLSA contains "no ... indication that Congress intended to abrogate the tribe's immunity to suit." 279 Fed.Appx. at 927. Although the FLSA "applies," the Tribe retains immunity absent an effective waiver.

## III. Waiver of Tribal Sovereign Immunity

■■■■ A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (quoting *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Although effective waiver of sovereign immunity requires no "magic words," a tribe's waiver must be "clear" and "unambiguous." *See C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001);

498 U.S. at 509, 111 S.Ct. 905; *Smith v. Hopland Band of Pomo Indians*, 95 Cal. App.4th 1, 115 Cal.Rptr.2d 455 (Cal.Ct. App.2002). The Tribe's sovereign immunity ordinance specifies the "exclusive method for tribal waiver of sovereign immunity." The ordinance states:

> the consent of the Seminole Tribe of Florida to waive its immunity from suit ... may only be accomplished through the clear, express, and unequivocal consent of the Seminole Tribe of Florida pursuant to a resolution duly enacted by the Tribal Council of the Seminole Tribe of Florida sitting in legal session. Any such resolution purporting to waive sovereign immunity ... shall specifically acknowledge that the Seminole Tribe of Florida is waiving its sovereign immunity o[n] a limited basis and describe the purpose and extent to which such waiver applies. The failure of the Tribal Council resolution to contain such language shall render it ineffective to constitute a waiver of tribal sovereign immunity....

Despite the absence of a resolution waiving the Tribe's immunity from an FLSA action, the plaintiff claims that the Tribe waived sovereign immunity by the gaming compact between the Tribe and Florida. Specifically, in Part XVIII of the compact,[4] the Tribe agrees to "comply with all federal and state labor laws, where applicable." The plaintiff construes this language as the Tribe's voluntary and express waiver of sovereign immunity. However, this language neither mentions nor alludes to tribal sovereign immunity, waiver, or the like and perforce fails to "specifically acknowledge that the Seminole Tribe of Florida is waiving its sovereign immunity," as required by the ordinance.

---

ignore the Supreme Court's conclusion that tribal immunity persists as "settled law."

4. FLA. STAT. § 285.711, Part XVIII (G) (2009).

The putative waiver is neither clear nor unambiguous—nor even detectable—and the plaintiff's proposed construction of the gaming compact is implausible. The plaintiff's construction of the compact assumes that negotiators for the Tribe and for Florida, although cognizant of ninety years of tribal immunity and cognizant of the need for a clear and unambiguous waiver to overcome tribal immunity, intended the Tribe casually and silently to waive immunity by an attenuated implication from a single sentence that mentions neither immunity, nor waiver, nor lawsuits, nor enforcement, nor jurisdiction, nor anything of like kind. In fact, by requesting the Tribe's promise in the compact, Florida affirms the Tribe's immunity; absent tribal immunity, the agreement to comply with applicable law is superfluous because the parties are already bound to comply with "applicable law." By bargaining for the Tribe's promise to comply with applicable law, Florida perhaps achieves a contractual right to declare the Tribe in violation of the compact for failing to comply with applicable labor law, but neither Florida nor the plaintiff acquires the right to sue in federal court to remedy a violation of the FLSA.

Additionally, in Part VI, Section C, the Tribe establishes a non-judicial, tribal mechanism for resolving an employment dispute. By directing an employee to consult the Tribe's "Employee Fair Treatment and Dispute Resolution Policy," the Tribe provides the employee with an established channel to resolve a dispute. The availability of a remedy for a dissatisfied employee undermines the plaintiff's argument that the Tribe intended to waive sovereign immunity by agreeing, elsewhere in the compact, to "comply with all federal and state labor laws." Instead, the Tribe established a specific mechanism for resolving an employee complaint in lieu of the traditional lawsuit. The Tribe's agreement to "comply" with federal and state law effects no waiver of immunity, and the plaintiff fails to show any other "clear" or "unambiguous" statement constituting a waiver of the Tribe's immunity.

### Conclusion

Because the Tribe enjoys immunity from this FLSA action, the motion to dismiss (Doc. 9) is **GRANTED,** and the FLSA claim is **DISMISSED.** Pursuant to 28 U.S.C. § 1367(c), supplemental jurisdiction over the state law claim is **DECLINED,** and Count II is **DISMISSED WITHOUT PREJUDICE.** The plaintiff's unopposed motion (Doc. 14) for an extension of time is **DENIED AS MOOT.** The Clerk is directed to (1) terminate any pending motion and (2) close the case.