Filed 6/6/13  Beasley v. Desai CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JONATHAN BEASLEY et al., | B239941 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. NC055957) |
| v. | |
| AMIR M. DESAI, | **ORDER MODIFYING OPINION [No Change in Judgment]** |
| Defendant and Respondent. | |

THE COURT:

The opinion filed herein on May 13, 2013, is ordered modified as follows:

Page 14:  Substitute the word "Plaintiffs" for the word "Defendants" in the first sentence of the final paragraph.

This modification does not effect a change in judgment.

Filed 5/13/13 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JONATHAN BEASLEY et al., | B239941 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. NC055957) |
| v. | |
| AMIR M. DESAI, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Joseph E. DiLoreto, Judge. Appeal treated as petition for extraordinary writ. The petition for extraordinary writ is denied.

Law Offices of James A. Otto, James A. Otto; Regina Ashkinadze for Plaintiffs and Appellants.

Kassinove & Raskin, Edward B. Raskin, Joshua M. Caplan for Defendant and Respondent.

_____

Plaintiffs attempt to appeal from an order sustaining a demurrer without leave to amend. Although such an order is not appealable, we exercise our discretion to treat plaintiffs' appeal as a petition for an extraordinary writ.

We find that plaintiffs' causes of action against their former supervisor for employment-based discrimination-related claims fail, primarily because, given the facts alleged, there is no individual liability for such claims. Therefore, the demurrer was properly sustained without leave to amend.

**FACTUAL AND PROCEDURAL BACKGROUND**

**Allegations**

Plaintiffs and appellants Jonathan Beasley, Irina Masharova, Anna Rshtouni, Marcelo Pineda, Chuck Price, Yuri Grishko, Tsung-Hsien Shen, Tim Luk, David De Hilster, Lily Bumatay, Partha Choudhury, Tim Nguyen, James Nguyen, Edward Duong, Ismail Guzey, Steve Mo, Bonita Shok, Karen Ku, and Adonis Villanueva are all former employees of Molina Healthcare, Inc. (Molina). Appellants worked in Molina's information technology (I.T.) department as security analysts or computer programmers. All are American citizens or green card holders, and all are over the age of 40.[1]

At Molina, appellants reported to defendant and respondent Amir Desai, the chief information officer at the time. Desai controlled all aspects of hiring for the I.T. department, and all managers under his supervision required his approval to hire personnel. Beginning in around 2007, Desai instituted a plan to replace appellants and similarly situated employees with Indian nationals, holding "H-1B visas," supplied by Cognizant Technology Solutions, Inc. (Cognizant).[2] Desai executed his plan over the course of several years, eventually displacing Molina's former employees (including

---

[1]    The allegations are taken from plaintiffs' second amended complaint. On review of a demurrer, we treat all properly pleaded facts as true. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

[2]    Under certain conditions, the United States may grant a work visa to an alien "who is coming temporarily to the United States to perform services in . . . a specialty occupation." (8 U.S.C. § 1101(a)(15)(H)(i)(b).)

3

appellants) with H-1B contractors. Overall, approximately 100 employees were terminated and replaced by Indian workers. The makeup of Molina's I.T. department changed from being diverse in ethnic background and age to being composed almost entirely of Indian nationals under the age of 40. Appellants allege, on information and belief, that Desai received "kickbacks" and "other financial incentives" from Cognizant for replacing Molina's employees with H-1B contractors.

In connection with its placement of H-1B contractors at Molina, Cognizant certified, to the United States Department of Labor, that there were no qualified United States citizens or residents who could perform the job functions sought for the compensation offered by Molina. Desai knew that Cognizant's certification was false but approved it anyway. On January 13, 2010, one day after the Department of Labor approved a Cognizant application made on behalf of Molina seeking visas for 40 H-1B contractors, Molina (through Desai) fired 40 competent I.T. department employees, including appellants, to make way for the contractors.

**Procedural Background**

Appellants filed a lawsuit against Desai as well as Molina and Cognizant.[3] In September 2011, Desai's demurrer to the first amended complaint was sustained with leave to amend.

Plaintiffs filed their second amended complaint on October 17, 2011. It alleged the following causes of action against Desai: (1) violation of California Constitution article I, section 8—national origin discrimination; (2) violation of Civil Code section 51; (3) intentional infliction of emotional distress; (7) age discrimination in violation of Government Code section 12940;[4] (8) failure to take all reasonable steps to prevent discrimination in violation of Government Code section 12940, subdivision (k); (9)

---

[3]     Molina and Cognizant are not parties to this appeal.

[4]     This claim was brought by all plaintiffs except for Beasley, Pineda, and Shen.

4

retaliation in violation of Government Code section 12940, subdivision (h); and (13) national origin discrimination in violation of Government Code section 12940.

Desai filed a demurrer to the second amended complaint. On February 8, 2012, the trial court sustained the demurrer without leave to amend.

## DISCUSSION

### I. Appeal and Review

Appellants attempt to appeal from the trial court's February 2012 order sustaining the demurrer, which is nonappealable. (*Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 202.) Furthermore, it appears that all appellants, except for Shok and Villanueva, are cross-defendants in a cross-complaint filed by Desai which is still being litigated. Normally, an unresolved cross-complaint defeats appealability. (*Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 698.) We, however, have discretion to save a premature appeal from an order sustaining a demurrer (see *Smith v. Hopland Band of Pomo Indians* (2002) 95 Cal.App.4th 1, 3, fn. 1), and, in extraordinary circumstances, to treat an appeal from a nonappealable order as a petition for extraordinary writ (*Angell*, at p. 698). In this case, because Shok and Villanueva are effectively finished with the litigation in the trial court except for a judgment of dismissal, and because their claims are identical to those of the other appellants and the issues are fully briefed, judicial economy will best be served by treating this appeal as a petition for extraordinary writ, so that we may decide the viability of all appellants' allegations against Desai in one sitting. (See *Justus v. Atchison* (1977) 19 Cal.3d 564, 568.)

An appellate court reviews a ruling sustaining a demurrer de novo, exercising independent judgment regarding whether the complaint states a cause of action as a matter of law. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.) We give the complaint a reasonable interpretation, treating the demurrer as admitting all material facts properly pleaded, but not assuming the truth of contentions, deductions or conclusions of law. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) A demurrer tests the legal sufficiency of the complaint. (*Hernandez v. City of Pomona*

5

(1996) 49 Cal.App.4th 1492, 1497.) As such, we are not concerned with the difficulties a plaintiff may have in proving the claims made in the complaint. (*Desai*, at p. 1115.)

## II. <u>Fair Employment and Housing Act Claims</u>

Appellants allege four causes of action against Desai arising under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.): age discrimination, failure to take reasonable steps to prevent discrimination, retaliation, and national origin discrimination.

Government Code section 12940 (section 12940) lays out a variety of unlawful employment practices. One of these is for an employer to discriminate, by discharge or other means, against a person because of his or her age or national origin. (§ 12490, subd. (a).) Another, generally referred to as "retaliation" (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1161-1162 (*Jones*)), is "'[f]or any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.'" (§ 12490, subd. (h).) The other unlawful practice at issue in this case is "[f]or an employer, labor organization, employment agency, apprenticeship, training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12490, subd. (k).)

Our Supreme Court has somewhat narrowly defined the class of defendants subject to liability under Government Code section 12940. *Reno v. Baird* (1998) 18 Cal.4th 640, 643 (*Reno*), held that employers may be sued under the FEHA for employment discrimination, but individuals may not be. *Jones* extended this holding to retaliation cases: "We conclude that the same rule applies to actions for retaliation that applies to actions for discrimination: The employer, but not nonemployer individuals, may be held liable." (*Jones*, *supra*, 42 Cal.4th 1158, 1160.)

In both *Reno* and *Jones*, the plaintiff sought to sue an individual supervisor in addition to the employer itself. Plaintiffs here have done the same thing, suing their

6

employer, Molina, and their former supervisor at Molina, Desai. In recognition of *Reno* and *Jones*, however, plaintiffs do not just label their suit against Desai as one against an individual, but also attempt to characterize Desai as an "employment agency." Employment agencies are subject to the retaliation and failure to take reasonable steps provisions of section 12940, and, in certain circumstances, may be liable for discrimination. (§ 12940, subds. (h, k, d).)

Under the FEHA, "'[e]mployment agency' includes any person undertaking for compensation to procure employees or opportunities to work." (Gov. Code, § 12926, subd. (e).) Plaintiffs argue that they have pled the requisite facts to treat Desai as an employment agency subject to FEHA liability. The FEHA causes of action in plaintiffs' second amended complaint each state, "[f]or the purposes of this cause of action, Defendants Cognizant and Desai were employers of the plaintiffs and/or an employment agency," allegations undercut by an earlier, incorporated allegation that Desai "is, and at all relevant times relevant herein, was an individual residing in Los Angeles County, California." Plaintiffs further contend that they pled Desai is an employment agency by alleging that he procured employment for Cognizant-affiliated H-1B contractors and that he was paid by Cognizant for doing so.

At first blush, this contention appears to have some merit. But when one considers the underlying reasons for the holdings in *Reno* and *Jones*, as well as the relationship between plaintiffs and Desai and their reasons for suing him, it becomes clear that plaintiffs' labeling of Desai as an employment agency is an ultimately unsuccessful attempt to evade the immunities afforded to individual supervisors.

In finding that supervisory employees are not subject to FEHA-based liability for discrimination, *Reno* cited approvingly to *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55 (*Janken*), in which we discussed a number of issues militating against the imposition of personal liability. We considered that many actions necessary to the performance of management duties could, from the viewpoint of a potential plaintiff, have the appearance of discrimination. Such actions include "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion,

7

performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off ." (*Id.* at pp. 64-65.) We contrasted these necessary supervisorial duties against acts of harassment (for which an employee may be held individually liable), which "consist[] of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." (*Id.* at pp. 63-64.) We further noted how an incongruity would arise if individual supervisors could be liable for FEHA-based discrimination claims while small employers could not, since "employer" is defined in Government Code section 12926, subdivision (d) as including "'any person regularly employing five or more persons.'" (*Janken*, at p. 71.) Moreover, we discussed how imposing personal liability on supervisory employees for discrimination would create conflicts of interest and chill effective management, as supervisors would be motivated to make personnel decisions on the basis of what course of action would least likely subject them to a FEHA-based suit, even if such decisions may not be in the best interests of the company. (*Id.* at pp. 72-74.)

Two years after *Janken*, the Supreme Court further clarified the rule against imposing FEHA-based liability on supervisors for discrimination: "We do not decide merely whether individuals should be held liable for their wrongdoing, but whether all supervisors should be subjected to the ever-present threat of a lawsuit each time they make a personnel decision. Litigation is expensive, for the innocent as well as the wrongdoer. By limiting the threat of lawsuits to the employer itself, the entity ultimately responsible for discriminatory actions, the Legislature has drawn a balance between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals." (*Reno*, *supra*, 18 Cal.4th at p. 663.) Later, in *Jones,* the Supreme Court held that "*Reno*'s rationale for not holding individuals personally liable for discrimination applies equally to retaliation." (*Jones*, *supra*, 42 Cal.4th at p. 1164.)

8

Viewed in the context of this controlling law, plaintiffs have failed to state a viable-FEHA based claim against Desai. Even though the second amended complaint contains allegations by which one could potentially characterize Desai as an "employment agency" (as that term is defined in the FEHA), these are not the allegations upon which plaintiffs base their claims of liability against Desai. The allegations make clear that each plaintiff's relationship with Desai was one of employee and supervisor, and plaintiffs seek damages against Desai because they were terminated by him and replaced by another person. Firing and hiring—the acts upon which Desai's claimed liability are based—are essential management duties.

As we stated in *Janken*, "Making personnel decisions is an inherent and unavoidable part of the supervisory function." (*Janken*, *supra*, 46 Cal.App.4th at p. 64.) In terminating plaintiffs, Desai was exercising the authority vested in him by Molina. Like any supervisor, were Desai hindered from terminating an employee or making other managerial decisions by the prospect of facing individual liability, he would lose the ability to perform his job adequately. The allegations that Desai helped place foreign contractors are not relevant to this analysis. Simply put, if Desai had not fired plaintiffs, there is no reason to presume that he would be a defendant in this lawsuit and, under FEHA, Desai, as plaintiffs' former supervisor, cannot be liable for making the decision to fire them, even for an improper reason. The employer can be held liable for discriminatory and retaliatory conduct under section 12940, but a supervisory employee cannot. (*Reno*, *supra*, 18 Cal.4th at p. 643; *Jones*, *supra*, 42 Cal.4th at p. 1160.) The demurrer, therefore, was properly sustained as to the FEHA-based causes of action.

## III. <u>Article I, Section 8</u>

Plaintiffs' claim against Desai for violation of article I, section 8 of the California Constitution (hereinafter, article I, section 8) is pled in similar terms to the FEHA causes of action. Plaintiffs seek lost wages and other damages as a result of Desai's alleged discrimination.

Article I, section 8 provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed,

color, or national or ethnic origin." Plaintiffs fail to identify any prior reported opinions upholding the validity of a private cause of action for damages premised solely on article I, section 8. While this omission by itself does not necessarily prevent plaintiffs from asserting such a cause of action, they must substantiate their ability to make the claim.

In *Katzberg v. Regents of the University of California* (2002) 29 Cal.4th 300 (*Katzberg*), and in its companion case *Degrassi v. Cook* (2002) 29 Cal.4th 333, the Supreme Court examined "whether an individual may bring an action for money damages on the basis of an alleged violation of a provision of the California Constitution, in the absence of a statutory provision or an established common law tort authorizing such a damage remedy for the constitutional violation." (*Katzberg*, at p. 303; *Degrassi*, 29 Cal.4th at p. 335.) *Katzberg* established a framework to decide the issue: "First, we shall inquire whether there is evidence from which we may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation. In undertaking this inquiry we shall consider the language and history of the constitutional provision at issue, including whether it contains guidelines, mechanisms, or procedures implying a monetary remedy, as well as any pertinent common law history. If we find any such intent, we shall give it effect.

"Second, if no affirmative intent either to authorize or to withhold a damages remedy is found, we shall undertake the 'constitutional tort' analysis adopted by *Bivens* [*v. Six Unknown Fed. Narcotics Agents* (1971) 403 U.S. 388] and its progeny. Among the relevant factors in this analysis are whether an adequate remedy exists, the extent to which a constitutional tort action would change established tort law, and the nature and significance of the constitutional provision. If we find that these factors militate against recognizing the constitutional tort, our inquiry ends. If, however, we find that these factors favor recognizing a constitutional tort, we also shall consider the existence of any special factors counseling hesitation in recognizing a damages action, including deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages." (*Katzberg*, *supra*, 29 Cal.4th 300, 317.)

In arguing that they should be allowed to assert an article I, section 8 claim, plaintiffs ask us to declare a "new cause of action for national origin or ethnic origin discrimination." Despite this weighty request, plaintiffs fail to make even a rote attempt to analyze the propriety of their claimed "new" cause of action under the factors explicitly required by *Katzberg*. Given these circumstances, we are not inclined to grant plaintiffs' request. (See *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 1004 ["'appellate court can treat as *waived or meritless* any issue that, although raised in the briefs, is *not supported by pertinent or cognizable legal argument or proper citation of authority*'"].)

In any event, our own analysis of the issue leads us to the conclusion that the establishment of a damages claim for violation of article I, section 8 is not warranted, at least as the matter appears in this appeal. As we have found no evidence of an affirmative intent either to authorize or to withhold a damages action to remedy a violation of article I, section 8, we proceed to the second step of the *Katzberg* analysis and examine, among other considerations, whether an adequate remedy already exists. (*Katzberg*, *supra*, 29 Cal.4th at p. 325.) We conclude that alternative remedies do exist. A multitude of cases has found that a common law tort claim for termination in violation of public policy may be premised upon a violation of article I, section 8. (See *Badih v. Myers* (1995) 36 Cal.App.4th 1289, 1295-1296; *Phillips v. St. Mary Regional Medical Center* (2002) 96 Cal.App.4th 218, 223; *Himaka v. Buddhist Churches of America* (N.D.Cal. 1995) 919 F.Supp. 332, 334-335; *Scott v. Solano County Health and Social Order Services Department* (E.D.Cal. 2006) 459 F.Supp.2d 959, 970.) Furthermore, as plaintiffs' article I, section 8 claim virtually mirrors their FEHA claims, the FEHA claims are also alternative remedies. That plaintiffs cannot state a cause of action against a supervisor for termination in violation of public policy (see *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900 (*Miklosy*) [claim "can only be asserted against *an employer*"]) or under FEHA is of no moment. Plaintiffs have stated such claims against both Cognizant and Molina. These are their alternative remedies.

None of the other factors under the *Katzberg* analysis compels us to declare that plaintiffs may pursue a cause of action for damages under article I, section 8. Plaintiffs' reliance on *Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458 is misplaced, since the Supreme Court in *Katzberg* specifically found that the case did not authorize a claim for damages. As plaintiffs have failed to provide the Court with any basis on which we may find their article I, section 8 claim valid, this cause of action is properly dismissed.

**IV. <u>Unruh Civil Rights Act</u>**

The Unruh Civil Rights Act, found at section 51 of the Civil Code, provides, in pertinent part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) Plaintiffs' second amended complaint alleges that Desai violated this provision by "refus[ing] to speak to plaintiffs, and each of them, about working for the defendants; asking plaintiffs if they were interested in working for the defendants [*sic*]; refusing to allow the plaintiffs to make job applications; rejecting the plaintiff's job applications when made to defendants and recruiting only individuals of Indian descent."

This cause of action fails. It has long been established that the Unruh Civil Rights Act does not apply in cases of employment discrimination. (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 500 (*Alcorn*) ["there is no indication that the Legislature intended to broaden the scope of section 51 to include discriminations other than those made by a 'business establishment' in the course of furnishing goods, services or facilities to its clients, patrons or customers"]; *Rojo v. Kliger* (1990) 52 Cal.3d 65, 77 ["the Unruh Civil Rights Act has no application to employment discrimination"].)

Desai's alleged refusal to consider retaining plaintiffs and his recruiting of other workers were done in the employment context. The authorities cited by plaintiffs, *Sisemore v. Master Financial Inc.* (2007) 151 Cal.App.4th 1386 and *Payne v. Anaheim*

12

*Memorial Medical Center, Inc.* (2005) 130 Cal.App.4th 729, are not apposite. The alleged wrongful conduct at issue in *Sisemore* was a financial institution's refusal to issue a home loan to the plaintiff. (151 Cal.App.4th at p. 1405-1406.) In *Payne*, it was a hospital's denial of facility privileges to a nonemployee physician. (130 Cal.App.4th at p. 733.) Neither of these cases involved the hiring and firing of employees, which is the basis of plaintiffs' claim, and one that does not lie under Civil Code section 51.

## V. Intentional Infliction of Emotional Distress

The elements of a cause of action for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant; (2) done with the intention to cause, or with reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of emotional distress. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.)

The allegations supporting plaintiffs' intentional infliction of emotional distress claims are similar to the allegations made in support of the causes of action discussed above. Desai, relying on *Miklosy*, and like authority, argues that the exclusive remedy provisions of California's workers' compensation law precludes plaintiffs from holding Desai personally liable for emotional distress arising out of their termination. In *Miklosy*, the plaintiffs claimed they suffered emotional distress as a result of adverse employment decisions. The Supreme Court upheld the defendants' demurrer, finding: "The alleged wrongful conduct . . . occurred at the worksite, in the normal course of the employer-employee relationship, and therefore workers' compensation is plaintiffs' exclusive remedy for any injury that may have resulted." (44 Cal.44 at p. 902; see also *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 25; *Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 754.)

Desai's argument that plaintiffs' claim here is precluded by workers' compensation law is incorrect. The conduct alleged in the action, discrimination on the basis of age and national origin, is not conduct arising in the normal course of an employer-employee relationship. It is therefore not barred by the exclusive remedy provisions of workers' compensation law. (*Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 352 (*Accardi*) ["a claim for emotional and psychological damage,

13

arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices"]; *Watson v. Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1287 ["Prohibited racial and age discrimination are against the law and policy of this state. Such discrimination is not a normal incident of employment, no less for an employee of the state than for one employed in the private sector."].)

Just because the claim is not barred by the workers' compensation law, however, does not mean that it may be asserted against an individual such as Desai. Plaintiffs contend that imposition of personal liability in this case is supported by *Alcorn* and *Accardi*. Although both of these cases upheld intentional infliction of emotional distress claims against various defendants, including individuals (see *Alcorn*, *supra*, 2 Cal.3d at p. 498-499; *Accardi*, *supra*, 17 Cal.App.4th at pp. 352-353), neither analyzed the issue of whether such a claim may be asserted against an individual supervisor for actions, such as hiring and firing decisions, that are fundamental to the managerial function.

Both *Alcorn* and *Accardi* were decided well before *Reno* and *Jones*, as well as *Janken*. In *Janken*, we found that the plaintiff's intentional infliction of emotional distress claim failed for similar reasons as his FEHA claim. We wrote: "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." (*Janken*, *supra*, 46 Cal.App.4th at p. 80.)

Defendants criticize this decision, arguing that it diverged from *Alcorn* and *Accardi*. As explained above, neither of those cases specifically analyzed the issue of supervisor liability. Furthermore, *Reno*, following *Janken*, expressed a congruent holding: "It would be absurd to forbid a plaintiff to sue a supervisor under the FEHA, then allow essentially the same action under a different rubric. Because plaintiff may not sue [defendant] as an individual supervisor under the FEHA, she may not sue her

14

individually for wrongful discharge in violation of public policy." (*Reno, supra*, 18 Cal.4th 640, 664.) More recently, Division Seven of this Court found that because a defendant supervisor could not be personally liable for discrimination-based employment claims under *Reno*, "it follows he cannot be held liable for the emotional distress claims either." (*Smith v. International Brotherhood of Electrical Workers* (2003) 109 Cal.App.4th 1637, 1658.)

These authorities apply equally well to this case. Thus, the demurrer was properly sustained in favor of Desai.

## VI. <u>Amendment Is Not Warranted</u>

Plaintiffs bear the burden of demonstrating a reasonable possibility of curing the defects in their complaint by amendment. (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 528.) We determine that they have not done so. Plaintiffs contend that they can allege further facts buttressing their assertion that Desai is an employment agency. These allegations, however, would not cure the fundamental defect with plaintiffs' claims—that they are premised on decisions Desai made in his supervisory function. Leave to amend, therefore, is not warranted.

### <u>DISPOSITION</u>

The appeal from the February 8, 2012, order is treated as a petition for an extraordinary writ. The petition for an extraordinary writ is denied. Desai shall recover his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

15