[No. A108615. First Dist., Div. Three. Nov. 1, 2005.]

BIG VALLEY BAND OF POMO INDIANS, Petitioner, v.
THE SUPERIOR COURT OF LAKE COUNTY, Respondent;
MICHAEL McALLISTER et al., Real Parties in Interest.

1186

COUNSEL

Nordhaus, Haltom, Taylor, Taradash & Bladh and Daniel I. S. J. Rey-Bear for Petitioner.

No appearance for Respondent.

Maximilian J. B. Hopkins, Maximilian J. B. Hopkins and Jessica Scianna, for Real Parties in Interest.

OPINION

**CORRIGAN, Acting P. J.**—The Big Valley Band of Pomo Indians (Tribe) operates a casino. Five casino employees (Employees) who had been terminated from employment sued the Tribe for breach of contract, alleging it failed to provide adequate severance pay. The Tribe enjoys sovereign immunity from a breach of contract suit. That enjoyment is not undermined by the presence of an arbitration clause in its contracts. The trial court is directed to sustain the Tribe's demurrer.

## FACTUAL AND PROCEDURAL BACKGROUND

The federally recognized Pomo Indian tribe owns and operates the Konocti Vista Casino. Gregory Sexton was hired as general manager of the casino pursuant to a written employment contract signed by the tribal chairman. Under the contract, if Sexton were terminated without cause he would be entitled to severance pay equal to four months' compensation. The contract also contains an arbitration clause providing that all disputes arising out of the contract or for its breach shall be submitted to arbitration.

Sexton allegedly signed employment contracts with the other plaintiffs on behalf of the Tribe. The contracts contain the same arbitration and termination provisions that appear in Sexton's agreement, and also include severance pay provisions. The complaint alleges each employment contract was "ratified and approved" by the Tribe.

The Employees were allegedly dismissed without cause and given two weeks' severance pay. The Employees demanded the additional severance pay provided in their contracts and threatened to initiate arbitration proceedings if payment was not made. The Tribe did not respond. The Employees then sent formal demand letters threatening legal action if payment was not forthcoming within 10 days. The Tribe neither responded nor paid.

Employees sued for breach of contract. They urged that the Tribe waived its sovereign immunity from suit by including arbitration clauses in each contract, and further, that the Tribe "impliedly waived" the arbitration requirement by failing to respond to their arbitration demands.

The Tribe demurred, claiming the trial court lacks subject matter jurisdiction because the Tribe had not waived its sovereign immunity. More specifically, regarding the contracts Sexton signed as general manager, the Tribe contended that judicially noticeable facts conclusively demonstrated the contracts were not ratified by the Tribe and thus did not waive the Tribe's immunity. The Tribe also argued that, to the extent it had waived immunity, a breach of contract cause of action falls outside the scope of the waiver, which is limited to actions to compel arbitration or to seek entry of a judgment on an arbitration award.

Employees opposed the demurrer, contending the court must disregard the evidentiary material the Tribe sought to introduce by way of requests for judicial notice and must assume that all facts alleged in the complaint are true for purposes of the demurrer. Employees relied on the United States Supreme Court's opinion in *C&L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Okla.* (2001) 532 U.S. 411 [149 L.Ed.2d 623, 121 S.Ct. 1589] (*C&L*

*Enterprises*), and a decision of Division One of this court, *Smith v. Hopland Band of Pomo Indians* (2002) 95 Cal.App.4th 1 [115 Cal.Rptr.2d 455] (*Smith*).

The court overruled the demurrer, citing to *Smith, supra,* 95 Cal.App.4th 1. It did not rule on the Tribe's request for judicial notice.

The Tribe sought a writ of mandate and/or prohibition[1] here and sought a stay of the action below. We granted a stay, requested opposition, and subsequently issued an order to show cause.

While this matter was pending, Sexton and the Tribe settled their dispute and a voluntary dismissal was entered. Accordingly, we dismissed the petition as to Sexton.

DISCUSSION

1. *Propriety and Scope of Review.*

■ Ordinarily a demurrer ruling is nonappealable and is reviewed following a judgment after trial. (*County of Santa Barbara v. Superior Court, supra,* 15 Cal.App.3d at p. 754.) Writ review of demurrer rulings is rarely granted unless a significant issue of law is raised or resolution of the issue would result in a final disposition as to the petitioner. (See *Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182 [123 Cal.Rptr.2d 637].)

■ Tribal sovereign immunity confers not just immunity from liability, but immunity from suit. (*Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 58 [56 L.Ed.2d 106, 98 S.Ct. 1670]; *Great Western Casinos, Inc. v. Morongo Band of Mission Indians* (1999) 74 Cal.App.4th 1407, 1418 [88 Cal.Rptr.2d 828] (*Great Western Casinos*).) An immunity defense is effectively lost if an immune party is forced to stand trial or face the other burdens of litigation. (Cf. *Mitchell v. Forsyth* (1985) 472 U.S. 511, 526 [86 L.Ed.2d 411, 105 S.Ct. 2806].) "Tribal sovereign immunity would be rendered meaningless if a suit against a tribe asserting its immunity were allowed to proceed to trial."

---

[1] Petitioner cites case law indicating that prohibition is the proper remedy when a sovereign immunity defense is raised. (See *County of Santa Barbara v. Superior Court* (1971) 15 Cal.App.3d 751, 754 [93 Cal.Rptr. 406].) A writ of mandate compelling dismissal achieves the same result as a writ of prohibition preventing the court from taking further action on the complaint, and either writ may be appropriate when a court lacks subject matter jurisdiction. (Cf. *J.C. Penney Co. v. Superior Court* (1959) 52 Cal.2d 666, 669 [343 P.2d 919]; 8 Witkin, Cal. Procedure (4th ed. 1997) Extraordinary Writs, § 233, pp. 1030–1031.) Because petitioner seeks to compel the trial court to sustain its demurrer, we treat the petition as one for writ of mandate.

(*Tamiami Partners v. Miccosukee Tribe of Indians* (11th Cir. 1995) 63 F.3d 1030, 1050 (*Tamiami Partners*).) Thus, interlocutory writ review is appropriate here.

■ "The standard of review for an order overruling a demurrer is de novo. The reviewing court accepts as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled. [Citation.]" (*Casterson v. Superior Court, supra,* 101 Cal.App.4th at pp. 182–183.) We must also consider matters that are properly the subject of judicial notice. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) It is well settled that evidentiary matters outside the complaint may not be considered upon such a review. (*Yamaha Motor Corp. v. Paseman* (1990) 219 Cal.App.3d 958, 963, fn. 2 [268 Cal.Rptr. 514].)

■ However, several California courts have adopted the federal reasoning that, when faced with a conflict over a sovereign immunity waiver, it is necessary and appropriate "to go beyond the pleadings and contract language to consider the testimonial and documentary evidence." (*Great Western Casinos, supra,* 74 Cal.App.4th at p. 1418, citing *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan* (D.C. Cir. 1997) 325 U.S. App.D.C. 117, 115 F.3d 1020, 1027–1028; see also *Smith, supra,* 95 Cal.App.4th at p. 7, fn. 8.) In *Great Western Casinos* and *Smith,* the courts considered additional evidence in assessing an immunity defense. The moving parties there had characterized their request for relief, at least in the alternative, as a motion to dismiss. (*Great Western Casinos, supra,* 74 Cal.App.4th at p. 1415; *Smith, supra,* 95 Cal.App.4th at p. 7, fn. 8; see also Code Civ. Proc., §§ 418.10, subd. (a)(3), 583.150.) This characterization is critical. In both *Great Western Casinos* and *Smith,* the courts emphasized it would not be proper to consider evidence outside the complaint if the defendants had simply demurred.[2]

Here, the Tribe styled its motion solely as a demurrer. Instead of submitting evidence to the trial court, affording their opponents an opportunity to challenge that evidence and to present their own, the Tribe relied upon requests for judicial notice. As discussed below, these requests were in many cases improper and would have introduced evidentiary matters beyond the complaint.

---

[2] See *Great Western Casinos, supra,* 74 Cal.App.4th at page 1417 ("it does not follow we must be constrained in our review of the trial court's ruling to simply the allegations of the complaint as if defendants had demurred"), *Smith, supra,* 95 Cal.App.4th at page 7, footnote 8 ("The declarations submitted to the court are not normally considered in the context of a demurrer. The Tribe, however, characterized its request for relief, in the alternative, as a motion to dismiss.")

Under these circumstances, we decline to construe the Tribe's demurrer as a motion to dismiss or to consider matters outside the complaint, except as to those matters properly subject to judicial notice. To hold otherwise would be fundamentally unfair to the Employees, who responded to the Tribe's demurrer subject to the well-settled rules governing such motions.

2. *The Complaint Adequately Alleges the Tribe Waived Its Sovereign Immunity.*

■ "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity. [Citations.]" (*Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.* (1998) 523 U.S. 751, 754 [140 L.Ed.2d 981, 118 S.Ct. 1700].) This immunity extends to a tribe's commercial activities. (*Id.* at p. 760.)

■ When a tribe consents to arbitration it makes a limited waiver of its sovereign immunity. (See *C&L Enterprises, supra,* 532 U.S. at p. 423.) A waiver is ineffective if the person purportedly waiving immunity lacks authority to do so. (*Warburton/Buttner v. Superior Court* (2002) 103 Cal.App.4th 1170, 1188 [127 Cal.Rptr.2d 706].) However, an otherwise ineffective waiver may become binding if it is later ratified by the tribe's governing body. (See *Smith, supra,* 95 Cal.App.4th at p. 9.)

In the complaint, Employees allege the Tribe ratified each employment contract at issue. The Tribe disputes the allegation, contending it is belied by judicially noticeable facts. The Tribe relies on the principle that, although facts alleged in a complaint are generally deemed to be true on demurrer, the court "will not close [its] eyes to situations where a complaint contains . . . allegations contrary to facts which are judicially noticed. [Citations.]" (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 [176 Cal.Rptr. 824].)

The general principle is unavailing here, however, because the "facts" offered to contradict key allegations are not properly the subject of judicial notice. In *Del E. Webb Corp. v. Structural Materials Co.,* on which the Tribe relies, the court held it may be appropriate for a court to take judicial notice of a plaintiffs' affidavits and verified discovery responses to the extent they contradict allegations of the complaint. (*Del E. Webb Corp. v. Structural Materials Co., supra,* 123 Cal.App.3d at pp. 604–605.) The court cautioned, however, against turning the hearing on demurrer "into a contested evidentiary hearing through the guise of having the court take judicial notice of affidavits, declarations, depositions, and other such material which was filed on behalf of the adverse party and which purports to contradict the allegations and contentions of the plaintiff. [Citation.]" (*Id.* at p. 605.) *Del E. Webb*

*Corp.* has itself been criticized for reasons Justice Abbe explained in *Garcia v. Sterling* (1985) 176 Cal.App.3d 17, 22 [221 Cal.Rptr. 349]: "Although the *existence* of statements contained in a deposition transcript [or declaration] filed as part of the court record can be judicially noticed, their *truth* is not subject to judicial notice." (Italics added.) Here, the Tribe has urged judicial notice of the truth of statements in a declaration, which would transform the demurrer proceeding into a contested evidentiary dispute.

Several documents presented by the Tribe are properly the subject of judicial notice. The Tribe's Constitution and bylaws, the Big Valley Rancheria Gaming Act of 1994, and the Resolution of the General Community Council of the Big Valley Rancheria No. 03-0197-1 are judicially noticeable respectively as a constitutional law, the legislative enactment of a public entity, and the official act of a "state" within the United States.[3] (Evid. Code, § 452, subds. (a), (b), (c); see *Smith, supra,* 95 Cal.App.4th at p. 7, fn. 8 ["The tribal sovereign immunity ordinance is judicially noticeable. [Citations.]")

The Tribe goes further, however. It claims the casino's human resources manual is equivalent to a tribal regulation, thus qualifying for judicial notice as either a regulation (Evid. Code, § 452, subd. (b)) or an official act of the Tribe. (Evid. Code, § 452, subd. (c).) These claims fail. The Tribe has provided no information about the source, legal effect, or official ratification of the human resources manual. (See *Willis v. State of California* (1994) 22 Cal.App.4th 287, 291 [27 Cal.Rptr.2d 413] [administrative manual not adopted as a regulation pursuant to the California Administrative Procedure Act was without legal effect]; see also *Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 744 [122 Cal.Rptr.2d 787].) The manual itself provides it should not be interpreted to promise that the "policies discussed in it will be applied in all cases." Lack of clear information about the manual's ratification and legal effect make it an improper subject for judicial notice.

■ A proffered declaration from the Tribal Secretary purports to establish the Tribe never ratified or approved the contracts of the Employees. The Secretary declares that her search produced no records indicating the Tribe ratified the contracts in question. The declaration of an adverse party is not a proper subject for judicial notice. The authority relied upon by the Tribe, *Hogen v. Valley Hospital* (1983) 147 Cal.App.3d 119 [195 Cal.Rptr. 5], is

---

[3] "State" is defined in the Evidence Code to include a "territory" or "insular possession." (Evid. Code, § 220.) While we are unaware of any reported decision treating a federally recognized tribe as a state under the Evidence Code, the characterization is appropriate for purposes of taking judicial notice of tribal laws. A federally recognized tribe is a sovereign entity and, thus, similar to a state or territory. (*Flynt v. California Gambling Control Com.* (2002) 104 Cal.App.4th 1125, 1135 [129 Cal.Rptr.2d 167].)

inapposite and does not support the proposition that such a declaration is subject to judicial notice. (*Id.* at p. 125 [records and files of state administrative board subject to judicial notice].) Nor is the declaration judicially noticeable as a "proposition[] that [is] not reasonably subject to dispute and capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subd. (h).) Among other things, the Employees may be justified in questioning whether the Tribe's records are complete, whether the records search of the Tribal Secretary was sufficiently exhaustive, and whether the Tribe consistently maintains records of similar actions. It is irrelevant that the statement may be admissible under an exception to the hearsay rule when offered to prove the absence of an official record. (See Evid. Code, § 1284.) The fact such an evidentiary statement falls under an exception to the hearsay rule does not make it an appropriate object of judicial notice.

The sole basis for the Tribe's contention that it never ratified the contracts is the Tribal Secretary's declaration. Excluding the declaration as an improper subject for judicial notice, we are left with the allegation of the complaint, which we must accept as true for purposes of a demurrer. This allegation is sufficient to establish the Tribe effected a limited waiver of its sovereign immunity in connection with the contracts.[4]

3. *The Scope of the Waiver, if any, is Limited to a Petition to Compel Arbitration or an Action to Enforce an Arbitration Award.*

"[T]o relinquish its immunity, a tribe's waiver must be 'clear.' " (*C&L Enterprises, supra,* 532 U.S. at p. 418.) Waivers are "strictly construed" (*Ramey Const. v. Apache Tribe of Mescalero Reserv.* (10th Cir. 1982) 673 F.2d 315, 320), and there is a "strong presumption" against them. (*Demontiney v. U.S. ex rel. Dept. of Interior* (9th Cir. 2001) 255 F.3d 801, 811.) "Because a waiver of immunity ' "is altogether voluntary on the part of [a tribe], it follows that [a tribe] may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted." ' " (See *Missouri River Services v. Omaha Tribe of Nebraska* (8th Cir. 2001) 267 F.3d 848, 852.)

Consistent with this rule, the Eleventh Circuit Court of Appeals has interpreted a waiver of tribal immunity in an arbitration clause to effectuate waiver only for purposes of compelling arbitration or entering judgment on an arbitration award. (*Tamiami Partners, supra,* 63 F.3d at pp. 1048–1049.) The Tribe contends these arbitration clauses should be similarly construed.

---

[4] We express no opinion on whether the excluded evidence would suffice to justify dismissal if raised in a motion seeking summary judgment or dismissal.

Employees urge *Tamiami Partners* is distinguishable. The agreement there contained an arbitration clause and a clause specifying the extent of the tribe's waiver. The latter clause provided: " 'The [Tribe] waives its sovereign immunity from suit as expressly provided in this Article. The United States District Court for the Southern District of Florida . . . shall have jurisdiction over the parties hereto in order to enforce the terms hereof specifically, upon one or both of the following events (i) [Tribe] fails to participate in an arbitration proceeding invoked as provided in Article 12, or (ii) failure by [Tribe] to abide by the terms of an arbitration award . . . ." (*Tamiami Partners, supra,* 63 F.3d at p. 1038.) According to Employees, the limitation on the scope of the immunity waiver was based on this clause, not the agreement to arbitrate.

By contrast, the contracts here do not expressly limit the immunity waiver but instead simply contain arbitration clauses, which provide: "Any claim or controversy arising out of or relating to any provisions of this Agreement, or breach thereof, shall upon written demand be resolved by arbitration under the rules of the American Arbitration Association in San Francisco, California, and judgement [*sic*] on any award by the arbitrators may be entered in any court having such jurisdiction. Arbitration costs shall be paid, one-half by each party and the party losing the award will reimburse the prevailing party their half."

■ The arbitration clauses here do not effect a general waiver of the Tribe's sovereign immunity even though the clauses are not explicitly self-limiting. They are insufficient to waive immunity from a breach of contract action. At most they indicate an arbitration award may be entered in a court of competent jurisdiction.[5] The United States Supreme Court in *C&L Enterprises* interpreted similar language to constitute a waiver of limited scope, including the consent to arbitration and enforcement of arbitration awards in state court. (*C&L Enterprises, supra,* 532 U.S. at p. 423.) The analysis in *C&L Enterprises* does not suggest that acceptance of an arbitration clause constitutes a broader immunity waiver.[6]

■ "In general, . . . waivers of sovereign immunity are narrowly construed 'in favor of the sovereign' and are not enlarged 'beyond what the

---

[5] Although the arbitration clause does not expressly provide that a party may file a petition to compel arbitration, the Tribe concedes the clause necessarily permits state court actions to compel compliance with the agreement to arbitrate.

[6] Because *C&L Enterprises* involved an action to enforce an arbitration award, the Supreme Court had no occasion to consider whether the immunity waiver extends beyond actions to compel arbitration or enforce an award. The court was careful to describe the effect of the arbitration clause as limited to a consent to arbitrate and enforce any award in state court. (See *C&L Enterprises, supra,* 532 U.S. at p. 423.)

language requires.' " (*World Wide Minerals v. Republic of Kazakhstan* (D.C. Cir. 2002) 353 U.S. App.D.C. 147, 296 F.3d 1154, 1162.)[7] Here, the clauses simply require the arbitration of disputes and the enforcement of arbitration awards, if necessary, in a court of competent jurisdiction. To permit a breach of contract action against the Tribe on the basis of the arbitration clause would enlarge the waiver beyond the language of the clause itself. Similarly, those cases that have considered the scope of an immunity waiver when a *tribe* files suit have limited the waiver "to the issues necessary to decide the action brought by the tribe; the waiver is not necessarily broad enough to encompass related matters, even if those matters arise from the same set of underlying facts." (*McClendon v. U.S.* (9th Cir. 1989) 885 F.2d 627, 630.) Thus, a tribe's participation in litigation does not amount to consent to counterclaims asserted by defendants in those actions. (*Ibid.*) Likewise, the Tribe's consent to arbitrate and to judicial enforcement of an award cannot be interpreted as its consent to be sued for all causes of action arising from a contract containing an arbitration clause.

■ Employees further assert that *Smith,* supports their claim the arbitration clauses waive the Tribe's immunity from an action to enforce their contracts. In *Smith,* Division One of this court reversed an order dismissing a breach of contract claim arising from a tribal contract containing an arbitration clause. (*Smith, supra,* 95 Cal.App.4th at pp. 2–3.) Contrary to the Employees' characterization, the *Smith* court had no occasion to consider whether the scope of the waiver was limited because the parties did not timely raise the issue. Indeed, in a footnote, the court noted: "We . . . express no opinion on the question whether the scope of the contractual waiver of immunity is limited to a suit to enforce an arbitration award, or a motion to compel arbitration, because the issue was not raised until respondents' petition for rehearing. [Citations.]" (*Id.* at p. 12, fn. 11.) It is fundamental that an opinion is to be " 'understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered.' " (*Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256, 281 [115 Cal.Rptr.2d 874, 38 P.3d 1098], quoting *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) *Smith* cannot be relied upon for a proposition the court expressly declined to reach.

■ While Employees also rely on the doctrine of equitable estoppel to enforce the terms of the contract, they cite no authority for the proposition that sovereign immunity may be overridden by application of equitable principles. Regardless of the equities, a court is not empowered to deprive an

---

[7] *World Wide Minerals* involves the immunity of foreign sovereigns. The United States Supreme Court has acknowledged that the law governing foreign sovereigns is instructive in assessing waivers of tribal immunity. (*C&L Enterprises, supra,* 532 U.S. at p. 421, fn. 3.)

Indian tribe of its sovereign immunity. (*People of State of Cal. v. Quechan Tribe Of Indians* (9th Cir. 1979) 595 F.2d 1153, 1155.)

 Finally, Employees allege the Tribe impliedly waived immunity by failing to respond to demands for arbitration. Sovereign immunity may not be waived by implication. (*Santa Clara Pueblo v. Martinez, supra,* 436 U.S. at p. 58.)

The Tribe's demurrer should have been sustained. The court lacked subject matter jurisdiction over a breach of contract action.

#### DISPOSITION

A peremptory writ of mandate shall issue directing respondent superior court to vacate its order overruling petitioner's demurrer and to enter a new and different order sustaining the demurrer without leave to amend as to the breach of contract cause of action. By this opinion the court expresses no view on the propriety of a petition to compel arbitration. The stay previously issued by this court shall be dissolved upon the issuance of the remittitur. Petitioner shall recover the costs incurred in this writ proceeding.

Parrilli, J., and Pollak, J., concurred.