[No. E050306. Fourth Dist., Div. Two. July 20, 2011.]

CALIFORNIA PARKING SERVICES, INC., Plaintiff and Appellant, v. SOBOBA BAND OF LUISEÑO INDIANS, Defendant and Respondent.

[black redaction bar]

COUNSEL

Law Offices of Michael A. Lotta and Michael A. Lotta for Plaintiff and Appellant.

Luebben Johnson & Barnhouse and Samuel D. Hough for Defendant and Respondent.

OPINION

**HOLLENHORST, Acting P. J.—**

## I.  INTRODUCTION

Plaintiff and appellant California Parking Services, Inc. (CPS), appeals the denial of its petition to compel arbitration of a dispute with defendant and respondent Soboba Band of Luiseno Indians (Soboba Band) arising out of a contract to provide parking services at the Soboba Casino on the Soboba Band's reservation. We affirm the denial of CPS's petition to compel arbitration because we agree with the trial court that the Soboba Band did not waive its sovereign immunity through the arbitration clause.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In March 2007, CPS contracted with the Soboba Band, a federally recognized Indian tribe, to provide valet parking services to the Soboba Casino for three years. The Soboba Band terminated the contract in June 2009 after problems arose during its performance. On August 31, 2009, CPS sought to compel arbitration pursuant to paragraph 7 of their agreement, which read, in pertinent part: "Any disputes under this Agreement that cannot be resolved amicably through a negotiated agreement shall be submitted for resolution to an arbitrator acceptable to both parties. . . . The arbitration need not take place through the American Arbitration Association unless the parties cannot otherwise agree. It shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association (September 2005 edition or later) *excluding Rule 48(c)*. The decision . . . shall be final and binding on both parties." (Italics added.) The contract also contained a choice-of-law clause, which read: "This Agreement shall be governed by the laws of the State of California and, where applicable, Tribal and Federal law."

The Soboba Band demurred to the petition to compel arbitration on the basis of sovereign immunity. CPS opposed the demurrer, and the Soboba Band replied to the opposition.

In October 2009, the court heard CPS's petition to compel arbitration, which it denied. The court held that CPS's petition to compel arbitration was barred by sovereign immunity. The court stated the arbitration clause did not waive sovereign immunity because of the "express inclusion [in the contract] of an exclusion of Rule 48(c) [of the Commercial Arbitration Rules of the American Arbitration Association]." Rule 48(c) provides: "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." (American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, rule R-48(c) (June 1, 2009) <http://www.adr.org/sp.asp?id=22440> [as of July 20, 2011].) (Rule 48(c).) The court reasoned that excluding Rule 48(c) "can have only one possible meaning, and that's an express refusal . . . of the [Soboba Band] to accept the jurisdiction of State and/or Federal Court."

### III. STANDARD OF REVIEW

Ordinarily, we review a denial of a petition to compel arbitration for abuse of discretion. (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484 [17 Cal.Rptr.3d 88].) However, where the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425 [34 Cal.Rptr.3d 547].)

Generally, the issue of whether the trial court had subject matter jurisdiction over an action against an Indian tribe presents a pure question of law. (*Warburton/Buttner v. Superior Court* (2002) 103 Cal.App.4th 1170, 1180 [127 Cal.Rptr.2d 706].) Moreover, where the construction and interpretation of a written instrument can be made without the aid of extrinsic evidence and on the basis of the terms contained therein alone, we employ a de novo standard. (*Ibid.*) Accordingly, a de novo standard is appropriate here, because our role is simply to determine whether the arbitration and choice-of-law clauses in the agreement between CPS and the Soboba Band constituted a waiver of the tribe's sovereign immunity.

### IV. DISCUSSION

■ "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its [sovereign] immunity." (*Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.* (1998)

523 U.S. 751, 754 [140 L.Ed.2d 981, 118 S.Ct. 1700].) A tribe's waiver must be clear and unequivocal to be effective. (*C & L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Okla.* (2001) 532 U.S. 411, 418 [149 L.Ed.2d 623, 121 S.Ct. 1589] (*C & L*).) Courts construe waivers of a tribe's sovereign immunity strictly and hold a strong presumption against them. (*Big Valley Band of Pomo Indians v. Superior Court* (2005) 133 Cal.App.4th 1185, 1193 [35 Cal.Rptr.3d 357] (*Big Valley*).)

■ CPS contends the Soboba Band waived its immunity to suit by including the arbitration clause in its agreement with CPS. In *C & L*, the United States Supreme Court confronted the question of whether an arbitration clause could act as a limited waiver of a tribe's sovereign immunity, and it answered in the affirmative. (*C & L, supra,* 532 U.S. at p. 418.) In *C & L*, a construction company attempted to enforce its arbitration award against an Indian tribe (which did not participate in the arbitration) after the tribe violated the agreement. (*Id.* at pp. 415–416.) The court found that the arbitration and choice-of-law clauses expressed a clear and unequivocal intention on the tribe's part "to adhere to [the contract's] dispute resolution procedures." (*Id.* at p. 420; see also *id.* at p. 418 [construction contract's "provision for arbitration and related prescriptions" led the court to the conclusion the tribe waived its immunity "with the requisite clarity"].) The arbitration provision in the current case, however, differs from that in *C & L* (and other cases cited by CPS) in at least one key respect. Whereas the arbitration clause in *C & L* incorporated the entirety of the arbitration rules of the American Arbitration Association, the Soboba Band's clause in its contract with CPS explicitly excluded Rule 48(c)[1]—the rule granting a federal or state court consent to enter judgment upon the arbitration award. (See *C & L, supra,* 532 U.S. at p. 415.) This distinction is fatal to CPS's case. In finding a waiver, the *C & L* court relied heavily on the tribe's consent to having the arbitral award confirmed in court, stating there was nothing ambiguous about agreeing to submit disputes " 'under the contract to 'arbitration, to be bound by the arbitration award, *and to have its submission and the award enforced in a court of law. . . .*' " (*Id.* at p. 420, italics added; see also *Oglala Sioux Tribe v. C & W Enterprises, Inc.* (8th Cir. 2008) 542 F.3d 224, 230 [noting that the *C & L* court particularly looked to the expressly incorporated language of Rule 48(c) when finding a waiver].) The exclusion of Rule 48(c) also distinguishes this case from that of other cases cited by CPS in its opening brief, including *Big Valley* and *Tamiami Partners v. Miccosukee Tribe of Indians* (11th Cir. 1995) 63 F.3d 1030. (*Big Valley, supra,*

---

[1] The arbitration rules at issue in *C & L* were Construction Industry Arbitration Rules of the American Arbitration Association, while the ones at issue here are the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association. For the purpose of this opinion, they are identical.

133 Cal.App.4th at p. 1194 [agreement expressly provided for judicial enforcement of the arbitration award]; *Tamiami, supra*, at p. 1048.)

■ CPS urges that we should nevertheless find a waiver on the ground that it would be "wrong and improper" to discard an entire arbitration provision simply because the Soboba Band "slipped in" the words, "excluding Rule 48(c)," at the end of a sentence. Although we are sympathetic to the position of CPS, we are constrained in this case by the heavy presumption against waivers of immunity. (See *Big Valley, supra*, 133 Cal.App.4th at p. 1193.) " 'Because a waiver of immunity " 'is altogether voluntary on the part of [a tribe], it follows that [a tribe] may prescribe the terms and conditions on which it consents to be sued . . . .' " ' [Citation.]" (*Ibid.*) As the court below noted, the Soboba Band's express refusal to incorporate Rule 48(c) cannot be interpreted as anything but a rejection of a state or federal court's jurisdiction. Accordingly, the Soboba Band's waiver of immunity can be considered neither clear nor unequivocal, as the law demands.

■ CPS argues alternatively that, at the very least, the Soboba Band consented to—and thereby waived its sovereign immunity in regards to—the court's compelling arbitration if not its enforcement of the arbitral award. The argument is attractive on its face, since any other reading would make the arbitration clause pretty much illusory, but it is without legal support. We were unable to find any case that provided for such a limited waiver of sovereign immunity, and with good reason. Arbitration awards are not self-enforcing and are only given legal effect through court orders and judgments enforcing them. (*D.H. Blair & Co., Inc. v. Gottdiener* (2d Cir. 2006) 462 F.3d 95, 104.) CPS would have us compel the Soboba Band to go through the motions of arbitration in order to yield an unenforceable award. (Cf. *C & L, supra*, 532 U.S. at p. 416 [construction company brought suit to enforce arbitral award only after engaging in ex parte arbitration proceedings due to the tribe's refusal to participate].) In order to avoid this exercise in futility, courts will generally assume that if a party consented to (or rejected) enforcement of the arbitral award, it must have also consented to (or rejected) the court's ability to compel arbitration, and vice versa. (See, e.g., *Big Valley, supra*, 133 Cal.App.4th at p. 1194, fn. 5 ["Although the arbitration clause does not expressly provide that a party may file a petition to compel arbitration, the Tribe concedes the clause necessarily permits state court actions to compel compliance with the agreement to arbitrate."].) Accordingly, we find the Soboba Band's rejection of the court's jurisdiction to enforce an arbitral award necessarily implies its rejection of the court's jurisdiction to compel arbitration as well. We cannot ascribe to CPS's theory of limited waivers that would allow the court to compel arbitration but not enforce the resulting award.

The inclusion of the choice-of-law provision does not strengthen CPS's case that there was a clear waiver. Although the Supreme Court noted in *C & L* that the choice-of-law provision made it "plain enough" the tribe had waived immunity to suit in state court, a fair reading of the case compels one to conclude that the court's holding did not hinge on this provision. (*C & L, supra*, 532 U.S. at p. 419; see *Oglala Sioux Tribe v. C & W Enterprises, Inc., supra*, 542 F.3d at pp. 232–233.) The court favorably cited multiple precedents finding a waiver of immunity based solely on arbitration clauses with no mention of choice-of-law provisions. (*C & L, supra*, 532 U.S. at pp. 417–423.) The choice-of-law provision only served to clarify which forum and what law would *enforce* the arbitral award. (*Id.* at pp. 419–420.) The presence of a choice-of-law provision will not help CPS overcome the insurmountable hurdle in this case that was not present in *C & L*, which is rejection of the state court's jurisdiction.

■ Finally, CPS argues that pursuant to the contract's choice-of-law provision, California law should have been used to interpret the waiver of sovereign immunity. If the trial court had used California law, CPS continues, Code of Civil Procedure section 1285 would have compelled a decision in its favor. Code of Civil Procedure section 1285 states that "[a]ny party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award." Despite the choice-of-law provision, federal law governs whether a federally recognized Indian tribe has waived its sovereign immunity by entering into an agreement to arbitrate. (*Smith v. Hopland Band of Pomo Indians* (2002) 95 Cal.App.4th 1, 10 [115 Cal.Rptr.2d 455] ["We conclude that, where, as here, the person negotiating and signing the contract is authorized to do so, and the tribal council approves the contract, the question whether that act constitutes a waiver is one of federal law."]; see *C & L, supra*, 532 U.S. at pp. 418–419 [applying federal law to determine whether contractual provisions effected a waiver despite choice-of-law provision electing Okla. law to govern contract]; *Big Valley, supra*, 133 Cal.App.4th at pp. 1193–1195 [applying federal law to determine whether arbitration clause effected waiver].) Even if state law governed, we fail to see how Code of Civil Procedure section 1285 is applicable, as no arbitration has taken place in this case and no award was issued.

■ Courts construe waivers of a tribe's sovereign immunity strictly and hold a strong presumption against them. (*Big Valley, supra*, 133 Cal.App.4th at p. 1193.) This hurdle can only be overcome if a tribe's waiver was clear and unequivocal. (*C & L, supra*, 532 U.S. at p. 418.) CPS was unable to meet this burden because the provisions of the agreement—namely, the exclusion of Rule 48(c)—expressly repudiated the jurisdiction of state and federal courts. Accordingly, the court below was correct in dismissing the petition to compel arbitration.

## V.   DISPOSITION

The order of the trial court denying CPS's motion to compel arbitration is affirmed. The parties shall bear their own costs.

McKinster, J., and Richli, J., concurred.