Filed 10/24/23  Mapp v. Viejas Band of Kumeyaay Indians CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| TIMOTHY MAPP,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>VIEJAS BAND OF KUMEYAAY INDIANS et al.,<br><br>        Defendants and Respondents. | D081152<br><br><br>(Super. Ct. No.<br> 37-2022-00005995-CU-NP-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

Timothy Mapp, in pro. per., for Plaintiff and Appellant.

Higgs, Fletcher & Mack, John Morris, Phillip C. Samouris, Steven M. Brunolli and Molly E. Humphreys, for Defendants and Respondents.

Plaintiff and appellant Timothy Mapp, a self-represented litigant, appeals from a judgment entered after the trial court granted the motion of defendants and respondents Viejas Band Of Kumeyaay Indians (the Band or at times the tribe) and Band employees Sandra Ortmeier and Michele Tollison to quash service of summons of Mapp's complaint based on principles

of sovereign immunity. In his complaint, Mapp alleged that defendants threatened to terminate his employment if he did not obtain a gaming license conditioned on him arranging to satisfy unpaid child support, which violated Family Code section 5290 and his constitutional Fifth Amendment right against self-incrimination. The court rejected Mapp's effort to allege jurisdiction under title 18 United States Code (U.S.C.) section 1162 and title 28 U.S.C. section 1360, ruling neither law abrogated the Band's immunity. It ruled the immunity extended to the Band's individual employees Ortmeier and Tollison, who were sued for enforcing tribal gaming regulations and not for any personal conduct.

Mapp contends the trial court has jurisdiction over the Band regarding family law issues and specifically child support enforcement. Citing portions of the Family Code relating to support and title 42 U.S.C. section 654, he argues we should reverse the judgment and he should be allowed to amend his complaint to allege these laws apply. Because Mapp's arguments give us no basis to reverse the judgment, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2022, Mapp, representing himself, filed a verified Judicial Council complaint alleging an "intentional tort" cause of action against the Band, Ortmeier and Tollison. The Band is a federally recognized Indian tribe. Mapp alleged Ortmeier, a gaming official, and Tollison, an investigator, were "agents for the Department of Child Support Services" whose function was to compel employees to increase child support payments by threatening adverse effects on their employment. He alleged the Band hired him as a hotel front desk clerk, but on his first day Ortmeier and Tollison threatened termination of his employment unless he agreed to obtain a gaming license containing a condition that he satisfy unpaid child support.

2

He alleged the conduct violated Family Code section 5290 as well as his Fifth Amendment right against self-incrimination.

The Band, Ortmeier and Tollison demurred and moved to quash service of the summons (Code Civ. Proc., § 418.10, subd. (a)(1)) on grounds sovereign immunity barred suit against both the Band and the individuals, who were sued in their capacity as Band employees enforcing gaming regulations, and thus the court lacked subject matter jurisdiction over Mapp's claims. They argued the Band had not waived its immunity. They further argued Mapp's complaint was subject to demurrer for lack of subject matter jurisdiction as well as its failure to state viable claims under Family Code section 5290 and the Fifth Amendment.

In opposition, Mapp argued in part that "[w]hen the defendants decided to engage in child support enforcement, and commit tortious employment interference to do it, they waived their sovereign immunity." He argued the court had jurisdiction over the Band and the individuals under title 18 U.S.C. section 1162, as well as title 28 U.S.C. sections 1360 and 1605. Mapp argued Family Code section 5290 created an implied right of action, and he had adequately alleged defendants' acts violated that statute. Mapp argued he stated a Fifth Amendment claim by allegations that he could face criminal contempt charges if he were to agree to satisfy his child support debt as the Band requested but then fail to make payments. Pointing to the principles that a pleading must be liberally construed and a complaint will be held sufficient if it appears a plaintiff is entitled to any relief, Mapp finally asserted that the defendants had not denied his allegations, which entitled him to a $500 fine for a Family Code section 5290 violation and were sufficient to state a cause of action.

3

Following an unreported hearing, the court granted defendants' motion to quash. It ruled neither title 18 U.S.C. section 1162 nor title 28 U.S.C. section 1360 abrogated immunity for the Band as opposed to the Band members, and title 28 U.S.C section 1360 did not confer California jurisdiction over Indian tribes, as contrasted with individual members of the tribe. Citing authority that "[t]ribal sovereign immunity extends to tribal officials when acting in their official capacity and within the scope of their authority" (*Miller v. Wright* (9th Cir. 2013) 705 F.3d 919, 927-928), the court ruled the individual defendants were being sued solely for enforcing the Band's tribal gaming regulations and not for any personal conduct, and thus tribal immunity extended to the individuals. It ruled the companion demurrer was moot as a result.

Mapp filed this appeal from the ensuing judgment of dismissal.[1]

---

[1] Mapp's notice of appeal states he is appealing from a judgment of dismissal after an order sustaining a demurrer. Because it is reasonably clear he is appealing from the judgment of dismissal after the court granted defendants' companion motion to quash service of summons, we will construe his appeal as from that order. (Cal. Rules of Court, rule 8.100(a)(2) [notice of appeal must be liberally construed]; *In re Joshua S.* (2007) 41 Cal.4th 261, 272 [" 'notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced' "].)

4

DISCUSSION

Mapp advances limited and cursory claims on appeal. He does not challenge the principle—which he asserts was confirmed in *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.* (1998) 523 U.S. 751, 757—that absent waiver or Congressional action to the contrary, the Band has sovereign immunity, at least over lawsuits arising from its commercial activities.[2] Rather, Mapp argues that during the hearing on defendants' motion and demurrer, he advised the court of provisions of the Uniform Interstate Family Support Act (Family Code, § 5700.101 et seq.) relating to child support, which provides that the definition of a " 'State' " includes an Indian nation or tribe, but that the court denied his request for leave to amend his complaint to allege those statutes, as well as a federal statute, title 42 U.S.C. section 654. He then asserts, "Because this matter involves child support enforcement the trial court does have [j]urisdiction over the [Band]."

---

[2]   The express holding in *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, *supra*, 523 U.S. 751 is narrow: "Tribes enjoy immunity from suits *on contracts,* whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation." (*Id*. at p. 760, italics added; see also *C & L Enterprises, Inc. v. Citizen Band of Potawatomi Indian Tribe of Oklahoma* (2001) 532 U.S. 411, 418 ["Tribal immunity, we ruled in *Kiowa,* extends to suits on off-reservation commercial contracts"]; *People v. Miami Nation Enterprises* (2016) 2 Cal.5th 222, 234 (*Miami Nation*) [characterizing *Kiowa* as holding tribes are immune from suit for breaches of contract involving off-reservation commercial conduct].)

5

I. *Appellate Principles*

In resolving Mapp's contentions, we apply the "fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) To obtain reversal, Mapp as the appellant must affirmatively demonstrate error. (*Petrolink, Inc. v. Lantel Enterprises* (2022) 81 Cal.App.5th 156, 165.) An appellate court is " 'not required to make an independent, unassisted study of the record in search of error or grounds to challenge a trial court's action' " (*Yazdi v. Dental Board of California* (2020) 57 Cal.App.5th 25, 36) or " 'consider alleged error where the appellant merely complains of it without pertinent argument.' " (*Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 149 Cal.App.4th 1460, 1480; see also *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].) Absent these required matters, the point is forfeited. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; *Sims v. Department of Corrections & Rehabilitation* (2013) 216 Cal.App.4th 1059, 1081.)

II. *Legal Principles and Standard of Review*

The California Supreme Court in *Miami Nation*, *supra*, 2 Cal.5th 222 discussed the historical underpinnings and current principles of tribal immunity. Originally, the United States Supreme Court "established that 'states lack jurisdiction in Indian country, that tribes are "domestic

dependent nations" to whom the United States owes a fiduciary obligation, and that Indian affairs are the exclusive province of the federal government.' " (*Id*. at p. 242.) Later, the high court held that " 'Indian Nations are exempt from suit without Congressional authorization.' " (*Id*. at p. 234.) Tribal immunity from suit is "is now firmly established as a matter of federal law 'and [the rule] is not subject to diminution by the States.' " (*Ibid*.) "Tribal immunity applies in both federal and state court and extends to 'suits arising from a tribe's commercial activities, even when they take place off Indian lands.' [Citation.] Immunity can be abrogated by Congress, but congressional intent to abrogate tribal immunity must be ' " 'unequivocally expressed.' " ' [Citation.] Immunity may also be waived, but 'a tribe's waiver must be "clear." ' " (*Id*. at p. 235; see also *In re Internet Lending Cases* (2020) 53 Cal.App.5th 613, 628 ["The law is well established that 'a waiver of sovereign immunity " 'cannot be implied but must be unequivocally expressed' " ' "].) These principles establish that "tribal immunity is the rule, subject only to two exceptions: when a tribe has waived its immunity or Congress has authorized the suit." (*Self v. Cher-Ae Heights Indian Community of Trinidad Rancheria* (2021) 60 Cal.App.5th 209, 213; *California Parking Services, Inc. v. Soboba Band of Luiseño Indians* (2011) 197 Cal.App.4th 814, 817-818.)

As for tribal officials, "[t]he protection offered by tribal sovereign immunity . . . is no broader than the protection offered by state or federal sovereign immunity." (*Lewis v. Clarke* (2017) 581 U.S. 155, 164.) The key inquiry is whether the sovereign is the real party in interest. (*Id*. at pp. 161-162.) "In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign.

7

[Citation.] If, for example, an action is in essence against a State even if the State is not a named party, then the State is the real party in interest and is entitled to invoke the Eleventh Amendment's protection. . . . [L]awsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent,' and they may also be barred by sovereign immunity." (*Id.* at p. 162; see also *Acres v. Marston* (2021) 72 Cal.App.5th 417, 430 ["A suit against a tribal official is really against the sovereign (and considered an official-capacity suit) if the plaintiff 'must look to the [tribal] entity itself' for relief"].)

Defendants moved to dismiss Mapp's complaint under Code of Civil Procedure section 418.10, subdivision (a)(1), providing for a motion to quash service of the summons on grounds the court lacks jurisdiction. "Typically, on a 'motion asserting sovereign immunity as a basis for dismissing an action . . . the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists.' [Citation.] When a tribe asserts sovereign immunity, the plaintiff must show that the tribe's immunity has been abrogated or waived; if not, the court lacks jurisdiction." (*Miami Nation, supra,* 2 Cal.5th at p. 242.)[3] "Whether tribal immunity bars suit is a question of law that we review de novo." (*Id.* at p. 250.)

Though the trial court did not reach defendants' demurrer, the review standard is the same. Accepting the truth of properly pleaded factual

---

[3] *Miami Nation* changed that burden of proof in cases where an entity that is formally distinct from an Indian tribe seeks to establish it is an "arm of the tribe." (*Miami Nation, supra,* 2 Cal.5th at pp. 242, 244.) In that event, the burden is placed on the entity asserting immunity to prove by a preponderance of the evidence that it is an arm of the tribe, which, among other things, comports with the idea that a party in possession of facts tending to support its claim should come forward with that information. (*Id.* at p. 244.) We are not presented with such facts here, so the standard burden of proof on the plaintiff applies.

allegations, we determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) On review of a demurrer a plaintiff may attempt to prove an amendment would cure a legal defect for the first time on appeal. (See *Ko v. Maxim Healthcare Services, Inc.* (2020) 58 Cal.App.5th 1144, 1150.) Even on de novo review, " ' "[t]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action. [Citation.] We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings." ' [Citation.] It is the trial court's ruling we review, not its reasoning or rationale." (*Kahan v. City of Richmond* (2019) 35 Cal.App.5th 721, 730.)

### III. *Analysis*

As stated, Mapp does not deny that sovereign immunity applies generally to lawsuits arising from a tribe's commercial activities. However, he disputes application of immunity in this particular context, which he characterizes as one of "child support enforcement," on the basis of the laws he cites.

While Mapp's brief follows most procedural requirements and attempts to address the question of subject matter jurisdiction with some citation to case law and statutes, it nevertheless misses the mark in certain respects and lacks cogent legal analysis. For example, rather than addressing the court's order quashing service of summons, Mapp directs his arguments to

the court's asserted refusal to permit him to amend his complaint, a point the court did not address having ruled the demurrer was moot. Additionally, while Mapp suggests the Uniform Interstate Family Support Act somehow applies to Indian nations or tribes, he does not explain with meaningful and reasoned legal analysis how that act's definition of a *state* as including an Indian tribe permits his lawsuit against defendants. And on appeal, Mapp relies on statutes that he did not mention in his papers below, which would normally allow us to reject his contentions as improperly raised for the first time on appeal. (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548 [" ' "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal" ' "].)

Because Mapp's appeal—including whether his complaint states a cause of action—ultimately presents a pure question of law (*Miami Nation, supra*, 2 Cal.5th at p. 250; *Mathews v. Becerra, supra*, 8 Cal.5th at p. 768), we will examine his contentions, but in view of the above-mentioned appellate principles. The question we decide is whether the laws Mapp relies upon contain an unequivocal expression of congressional intent to abrogate tribal

immunity. (*Miami Nation, supra,* 2 Cal.5th at pp. 234-235.)[4] Ultimately, as we explain, neither Mapp's arguments nor the laws he cites present any reason to disturb the judgment.

A. *Immunity as to the Band*

On appeal, Mapp does not argue that the Band waived its immunity or that he can allege such facts. Such a waiver must be clear and unequivocal in any event to be effective. (*California Parking Services, Inc. v. Soboba Band of Luiseño Indians, supra,* 197 Cal.App.4th at p. 818.) Mapp does not overcome the "strong presumption" (*ibid*.) against any such waiver.

Nor do any of the laws Mapp cites establish Congress has either abrogated the Band's immunity or authorized his suit. In his complaint, Mapp alleged the court possessed jurisdiction under title 18 U.S.C. section 1162 and title 28 U.S.C. section 1360, commonly known as Public Law 280. (See *United Auburn Indian Community of Auburn Rancheria v. Newsom*

---

[4] In *Miami Nation,* the California Supreme Court observed that California appellate courts have characterized tribal immunity in terms of subject matter jurisdiction. (*Miami Nation, supra,* 2 Cal.5th at p. 243.) It explained that because sovereign immunity is subject to waiver and courts have no obligation to sua sponte raise it, the immunity is actually "not 'a true jurisdictional bar' that automatically divests a court of the ability to hear and decide the case." (*Id*. at pp. 243-244.) For these reasons, it said, " 'whatever its jurisdictional attributes,' tribal immunity 'does not implicate a . . . court's subject matter jurisdiction in any ordinary sense.' " (*Id*. at p. 244.) In *Greenville Rancheria v. Martin* (2023) 93 Cal.App.5th 466, the court distinguished *Miami Nation,* explaining that state courts are empowered to decide whether a state statute was violated, which was the question in *Miami Nation,* but that fundamental subject matter jurisdiction is implicated where a court is asked whether it is "empowered to decide a particular subject that is reserved to the sole authority of a tribe." (*Greenville Rancheria,* at p. 477.) Whether we view the issue in terms of the court lacking subject matter jurisdiction or a bar of suit based on sovereign immunity, Mapp has given us no basis to reverse the judgment.

11

(2020) 10 Cal.5th 538, 545.)  He also referred to those statutes in opposition to defendants' motion.  But Mapp does not mention these laws on appeal, explain how they permit the California court to exercise subject matter jurisdiction over the tribe, or whether they are some clear indication of Congressional authority for his lawsuit.  In those laws, Congress expressly granted California state courts jurisdiction over *individual tribal members* in specified circumstances.  (*Rincon Band of Luiseño Mission Indians etc. v. Flynt* (2021) 70 Cal.App.5th 1059, 1087-1088, citing 28 U.S.C. § 1360; see also *Corrales v. California Gambling Control Commission* (2023) 93 Cal.App.5th 286, 301; *People ex rel. Becerra v. Huber* (2019) 32 Cal.App.5th 524, 533.)  This includes criminal jurisdiction over Indian land (*United Auburn*, at p. 545), and civil litigation in limited circumstances, "involving ' " 'private persons or private property' " ' touching on, ' "the laws of contract, tort, marriage, divorce, insanity, descent, etc." ' " (*Rincon*, quoting *Bryan v. Itasca County, Minnesota* (1976) 426 U.S. 373, 383-385, fn. 10; see *Doe v. Mann* (9th Cir. 2005) 415 F.3d 1038, 1050-1051.)[5]  But "Public Law 280 does not provide jurisdiction over disputes involving a *tribe.*"  (*Lamere v. Superior Court* (2005) 131 Cal.App.4th 1059, 1064; see also *Bryan*, at pp. 388-389 ["there is notably absent [in Public Law 280] any conferral of state jurisdiction over the tribes themselves"].)

In his opposition papers, Mapp referred to title 28 U.S.C. section 1605, which is part of the Foreign Sovereign Immunities Act of 1976.  (See *Self v. Cher-Ae Heights Indian Community of Trinidad Rancheria, supra*, 60

---

[5]    The criminal and civil provisions appear in the separate cited titles. (18 U.S.C. § 1162 (criminal) and 28 U.S.C. § 1360 (civil).)  (See *Native Village of Venetie I.R.A. Council v. State of Alaska* (9th Cir. 1991) 944 F.2d 548, 559, fn. 15.)

Cal.App.5th at pp. 217-218.) Again, he does not mention this law on appeal. But "[t]ribes are not foreign sovereigns" (*id.* at p. 218) and "[t]he Supreme Court has rejected the notion that tribal sovereign immunity must be congruent with foreign sovereign immunity." (*Ibid.*) As in *Self*, Mapp "do[es] not explain why we should extend [a common law exception to foreign sovereign immunity] to tribes." (*Ibid.*)

Mapp has not demonstrated that the cited provisions of the Uniform Interstate Family Support Act or any other provision of California's Family Code somehow abrogate the Band's immunity, constitute congressional authorization for his suit, or impart subject matter jurisdiction over the Band. And as stated, Mapp on appeal provides no reasoned argument as to why the definition of a state as including an Indian nation or tribe in that law (Fam. Code, § 5700.102 [the term " 'State' . . . includes an Indian nation or tribe"]), would compel those conclusions.[6] On appeal, Mapp contends that he told the trial court about the laws, but that the court improperly denied him leave to amend his complaint. Because the hearing on defendants' motion

_____

[6] The Uniform Interstate Family Support Act is codified in California as Family Code section 5700.101 et seq. (*In re Marriage of Sawyer* (2020) 57 Cal.App.5th 724, 733; *Cima-Sorci v. Sorci* (2017) 17 Cal.App.5th 875, 878, fn. 1.) A federal mandate requires California to adopt the act, which " ' "governs, inter alia, the procedures for establishing, enforcing and modifying child support orders in cases in which more than one state is involved." ' " (*Sawyer*, at p. 733; Fam. Code, § 5700.101, subd. (b) ["There is a federal mandate set forth in Section 666(f) of Title 42 of the United States Code requiring California to adopt and have in effect the Uniform Interstate Family Support Act, including any amendments officially adopted by the National Council of Commissioners on Uniform State Laws as of September 30, 2008"].) Family Code section 5700.102 sets out definitions, and provides that " 'State' means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession under the jurisdiction of the United States. The term includes an Indian nation or tribe."

13

was unreported, we do not know what Mapp told the court about the effect of that act on his complaint. Mapp has not met his burden in this court to demonstrate how his proposed amendments will cure the deficiencies. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; *Kahan v. City of Richmond, supra*, 35 Cal.App.5th at p. 730.)

Mapp also contends he advised the trial court about title 42 U.S.C. section 654, federal legislation that requires states to create or designate an organizational unit devoted to collection and distribution of child support payments. (42 U.S.C. § 654(3), (4).) He quotes a provision of that federal statute that states: "Nothing in paragraph (33) [of title 42 U.S.C. section 654] shall void any provision of any cooperative agreement entered into before [August 22, 1996], nor shall such paragraph deprive any State of jurisdiction over Indian country (as so defined) that is lawfully exercised under section [1322 of Title 25]."[7] Apart from citing portions of the legislation, he provides no reasoned analysis as to how that law authorizes this suit against the Band or abrogates its immunity. It is not our role to

_____

[7] Title 25 U.S.C. section 1322 provides in part: "The consent of the United States is hereby given to any State not having jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State to assume, *with the consent of the tribe occupying the particular Indian country or part thereof which would be affected by such assumption,* such measure of jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State." (25 U.S.C. § 1322(a), italics added.) The import of the above-italicized language is that the state may not exercise jurisdiction unless the tribe consents.

14

make these arguments for Mapp.  (*Coast Community College Dist. v. Commission on State Mandates* (2022) 13 Cal.5th 800, 823, fn. 10.)

B.  *Individual Defendants*

In his appellate briefing, Mapp does not address individual defendants Ortmeier and Tollison or whether sovereign immunity extends to them.  Our conclusions about the statutes he cited below and on appeal stands for these defendants as well.  And, under fundamental appellate review principles, we presume the court's judgment is correct as to the individual defendants, and Mapp has forfeited any arguments challenging the judgment as to them, allowing us to affirm on this basis alone.

But under the applicable test discussed in *Lewis v. Clarke*, *supra*, 581 U.S. 155, we would conclude as a matter of law sovereign immunity bars the action against them as well.  Mapp alleges that when he reported to the Band's gaming commission office on his first day of work, Tollison told him he was required to obtain a gaming license, but due to his child support obligation, he would receive a conditional license that required termination of his employment on violation of any condition.  He alleges Ortmeier told him the conditions were standard and he had to agree to them in order to work, and also agree to satisfy his unpaid child support within 90 days or pay the balance in two years by wage assignment.  Mapp alleges:  "The defendants have threatened [him] with termination of employment.  The t[er]mination will happen, unless he signs an agreement with the Department of Child Support Services to increase payment.  . . .  [¶] . . . [¶]  Any issue between [him] and [Department of Child Support Services] is not the business of the defendants." (Capitalization omitted.)  Mapp requested equitable relief and punitive damages "in the amount of $250,000.00 plus $500.00 as per California Family Code [section] 5290."  Mapp alleges he was suing Ortmeier

and Tollison "in their official and unofficial capacity."  (Capitalization omitted.)  But, as explained in *Lewis v. Clarke*, *supra*, 581 U.S. 155, "courts may not simply rely on the characterization of the parties in the complaint" (*id*. at p. 162) when assessing whether sovereign immunity bars suit against employees.

In *Lewis v. Clarke*, *supra,* 581 U.S. 155, a negligence lawsuit was brought against a tribal employee operating a vehicle within the scope of his employment on state lands (an interstate highway within the State of Connecticut).  (*Id*. at p. 163.)  The court observed that the "judgment [would] not operate against the Tribe."  (*Ibid*.)  Because the lawsuit was not against the individual in his official capacity but "simply a suit against [the individual] to recover for his personal actions, which 'will not require action by the sovereign or disturb the sovereign's property,' " the individual was the real party in interest and sovereign immunity was not in play.  (*Ibid*.)[8]

---

8      Defendants rely on *Brown v. Garcia* (2017) 17 Cal.App.5th 1198 to argue that both Ortimeier and Tollison are immune from suit because they were "carrying out the Band's regulatory functions in investigating [Mapp] and issuing a conditional license in conformity with the Band's internal governmental policy and discretionary, regulatory authority."  *Brown* held a defamation action against individuals was an " 'official capacity suit' " subject to sovereign immunity where "substantial evidence established that defendants were tribal officials at the time of the alleged defamation and that they were acting within the scope of their tribal authority when they determined that . . . plaintiffs should be disenrolled from the Tribe pursuant to a validly enacted tribal ordinance."  (*Id*. at p. 1206.)  In *Acres v. Marston, supra,* 72 Cal.App.5th 417, the court disagreed with *Brown*'s reasoning, instead following *Lewis v. Clarke*, *supra*, 581 U.S. 155.  (*Acres v. Marston,* at p. 437; see also *Acres Bonusing, Inc v. Marston* (9th Cir. 2021) 17 F.4th 901, 914 [holding *Brown*'s analysis was "inconsistent with *Lewis* [*v. Clarke*] and [other Ninth Circuit] precedents," because *Brown* declined to apply a " 'remedy-focused general rule' "].)

In *Acres v. Marston*, *supra*, 72 Cal.App.5th 417, the plaintiff sued individual defendants (officials of a tribal casino, a judge, and multiple attorneys), alleging they wrongfully filed or conspired to file a tribal lawsuit and committed other torts against him, seeking monetary relief from them directly for personal injury damages as well as to recover for himself compensation the individuals had received from the tribe, the casino and related entities. (*Id*. at pp. 427, 432.) On appeal from an order quashing the complaint, the Court of Appeal held the individuals were not entitled to sovereign immunity. (*Id*. at p. 432.) Applying the principles in *Lewis v. Clarke*, it reasoned a judgment against them "would not obligate the Tribe or the Casino to pay the relief [plaintiff] seeks" but "would only obligate the individual respondents to pay the requested damages out of their own pockets." (*Acres v. Marston,* at pp. 432-433.) It rejected the notion that because they were high ranking tribal officials or attorneys, they were entitled to sovereign immunity as of right. (*Id*. at p. 435.)

Mapp's claims in this case relate to his employment by the Band and its potential termination based on the Band's provision of a conditional license via its officials. He seeks to allege a violation of Family Code section 5290, which permits assessment of a civil penalty against an "employer" for specified conduct.[9] That remedy and any judgment would be expressly against the Band. Mapp's other damages related to negative employment decisions likewise would effectively obligate the Band, not personally the

_____

9    Family Code section 5290 provides: "No employer shall use an assignment order authorized by this chapter as grounds for refusing to hire a person, or for discharging, taking disciplinary action against, denying a promotion to, or for taking any other action adversely affecting the terms and conditions of employment of, an employee. An employer who engages in the conduct prohibited by this section may be assessed a civil penalty of a maximum of five hundred dollars ($500)."

individuals who were implementing the Band's gaming license rules and conditions.  In short, the Band is the real party in interest, and sovereign immunity extends to the individual defendants.

In reaching these conclusions, we recognize Mapp represents himself. But "the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation."  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)  An appellant "is not exempt from [appellate] rules because he is representing himself on appeal in propria persona.  . . .  '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' "  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

## DISPOSITION

The judgment is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.